## THE R.A. CIVITELLO COMPANY *v.* CITY OF NEW HAVEN (3310)

HULL, DALY and BIELUCH, Js.

Argued November 13, 1985—decision released February 11, 1986

*Charles G. Albom,* corporation counsel, with whom, on the brief, was *Carolyn W. Kone,* assistant corporation counsel, for the appellant (named defendant).

*Robert B. Cohen,* with whom, on the brief, were *Jacob H. Channin* and *Susanne Gordon,* for the appellee (third party defendant Edward Larrabee Barnes).

*William F. Gallagher,* with whom, on the brief, were *Robert J. Gillooly* and *Elizabeth A. Gallagher,* for the appellee (third party defendant Spiegel & Zamecnik, Inc.).

*Vincent M. DeAngelo,* with whom were *Louis B. Blumenfeld, Lorinda S. Coon,* and, on the brief, *Eugene S. Cooney,* for the appellee (third party defendant Van Zelm, Heywood & Shadford, Inc.).

HULL, J. This is an appeal from the rendering of summary judgment for three third party defendants on third party complaints brought by the defendant city of New Haven.

The R.A. Civitello Company, a construction contractor, brought suit against the city of New Haven in December, 1977, claiming damages arising out of a 1972 contract between the parties for the construction of a public school in the city. Civitello alleged that the city had caused lengthy delays in its performance of the contract work and as a result it had suffered damages. The city denied the allegations in this underlying action and later brought the three third party actions involved in this case. These actions were initiated as follows: (1) against Edward Larrabee Barnes, the architect hired by the city; (2) against Spiegel and Zamecnik, Inc., the structural engineering company retained by Barnes; and (3) against Van Zelm, Heywood and Shadford, Inc., the mechanical engineering company retained by Barnes.

In its third party actions, the city claimed breach of contract and negligence against Barnes, and negligence against the others. Each third party defendant filed a motion for summary judgment on the ground that the city's negligence claim was barred by the three year statute of limitations contained in General Statutes § 52-584.[1] Barnes made the additional claim that the contract action against him was barred by the six year statute of limitations contained in General Statutes § 52-576.[2] The city also moved for partial summary judgment against the three third party defendants on their respective special defenses of statute of limitations on the ground that such special defense was

---

[1] General Statutes § 52-584 provides in pertinent part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

[2] General Statutes § 52-576 provides in pertinent part: "(a) No action . . . on any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

barred by the doctrine of governmental immunity. The parties agreed in the trial court, and on appeal, that all acts giving rise to the city's claims against the third party defendants occurred before September 1, 1974, so that, if the three year statute of limitations; General Statutes § 52-584; applied, the city's claims against the third party defendants would be barred, and, if the six year statute; General Statutes § 52-576; applied, the contract claim against Barnes would be barred. It was also agreed that if the seven year statute of limitations covering architects and engineers; General Statutes § 52-584a; applied, the city's claims would not be barred.

The trial court thus considered two clear cut issues: (1) whether the city of New Haven was vested with governmental immunity so that the city was immune from a statute of limitations running against it; and (2) if the city was not so immune, what statute of limitations applied to the city's third party claims against the three third party defendants.

The court granted the third party defendants' motions for summary judgment.[3] It held that the rights asserted by the city were proprietary rights and, consequently, that the city was not immune from the defense of statute of limitations. The court further held that subsection (d) of General Statutes § 52-584a prevented the seven year limitation from being operative. The court reasoned that to hold otherwise would extend the three year and six year time periods, running from the accrual of causes of action, to a seven year time period, running from substantial completion of performance. Such a decision, the court stated, would be contrary to subsection (d). Thus, the court concluded that the city's negligence and contract actions were

[3] Although the court did not specifically rule on the city's counter motion for partial summary judgment, it impliedly denied that motion when it granted the motions filed by the third party defendants.

barred by General Statutes §§ 52-584 and 52-576 and rendered summary judgment for the third party defendants. The court thereafter rendered judgment for the third party defendants and against the city in the third party actions.

The city, as third party plaintiff, appeals from the judgment rendered against it and raises the two issues considered below: (1) whether the court erred in granting summary judgment to the third party defendants and in ruling that the city, in hiring an architect or structural engineer in connection with the construction of a public school building, was engaged in a proprietary function and not a governmental function, and was therefore bound by the ordinary statutes of limitations governing negligence and contract actions respectively;[4] and (2) whether the court erred in concluding that § 52-584a, which expressly allows actions against architects and engineers for their work to be brought within seven years after substantial completion of that work, did not supersede the general three and six year statutes of limitations applicable to tort and contract actions which run after a cause of action accrues and

---

[4] The defendant Barnes contends that the city waived its right to claim immunity by not filing a motion to strike his statute of limitations defense. The defendants Spiegel and Van Zelm claim waiver by the city's failure to plead immunity as a matter in avoidance of the statute of limitations. In response to defendant Barnes' claim, the city contends that it was not required to file a motion to strike. In response to defendants Van Zelm and Spiegel, it argues that there is no waiver because the city's complaint contained allegations constituting a claim of immunity and because the claim was fully litigated at trial.

The third party defendants' claims of waiver were not raised during the trial court's consideration of the motions for summary judgment. Under these circumstances, we could decline to consider the matter further. *Chaplin* v. *Balkus,* 189 Conn. 445, 447, 456 A.2d 286 (1983). We note, however, that the issue of sovereign immunity was raised in the city's brief before the trial court and was fully litigated. Thus, the normal rule of waiver cited in *Marlin Rockwell Employees Credit Union* v. *Brown,* 3 Conn. Cir. 569, 571, 221 A.2d 862 (1966), is inapplicable.

therefore erred in granting summary judgment against the city.[5]

# I

## WHETHER THE CITY WAS IMMUNE FROM THE SPECIAL DEFENSE OF STATUTE OF LIMITATIONS

"The Connecticut Supreme Court has repeatedly stated that, *as respects public rights*, 'a subdivision of the state, acting within its delegated *governmental capacity*, is not impliedly bound by the ordinary statute of limitations.' *State* v. *Goldfarb*, 160 Conn. 320, 326, 278 A.2d 818 (1971); *New Haven* v. *Torrington*, 132 Conn. 194, 204, 43 A.2d 455 (1945); *Bridgeport* v. *Schwarz Bros. Co.*, 131 Conn. 50, 54, 37 A.2d 693 (1944)." (Emphasis added.) *Department of Transportation* v. *Canevari*, 37 Conn. Sup. 899, 900–901, 442 A.2d 1358 (1982). The distinction between governmental and nongovernmental functions was clearly stated in *Winchester* v. *Cox*, 129 Conn. 106, 109, 26 A.2d 592 (1942): "The functions of a municipal corporation fall into two classes, those of a governmental nature, where it acts merely as the agent or representative of the state in carrying out its public purposes,

---

[5] The city, in its reply brief to Barnes' brief, citing *McEvoy* v. *Waterbury*, 92 Conn. 664, 666, 104 A. 164 (1918), argued for the first time that the city's indemnification claim, based upon a breach of contract by defendant Barnes, was timely filed because the statute of limitations does not begin to run until judgment against the plaintiff is rendered. Later, in reply to Spiegel's arguments in its brief, which Spiegel was not entitled to make since no such claim was filed against it, the city restated its claim and argued that the period of limitations on a third party contract claim does not begin to run until the third party defendant is impleaded. We decline to consider this claim of error. "Claims of error by an appellant must be raised in his original brief; Practice Book § 3060F; so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." *Finley* v. *Aetna Life & Casualty Co.*, 5 Conn. App. 394, 403 n.6, 499 A.2d 64 (1985).

and those of a proprietary nature, where it carries on activities for the particular benefit of its inhabitants." (Citations omitted.)

Although this case involves the city itself rather than its board of education, the reasoning of the court in *Board of Education* v. *Dow Chemical Co.,* 40 Conn. Sup. 141, 142–43, 482 A.2d 1226 (1984), concerning sovereign immunity, is instructive. "The protections offered by the doctrine of sovereign immunity have been extended to agents of the state acting in its behalf. *Cahill* v. *Board of Education,* 187 Conn. 94, 101, 444 A.2d 907 (1982). A board of education is an agency of the state in charge of education in a town. *Murphy* v. *Berlin Board of Education,* 167 Conn. 368, 372, 355 A.2d 265 (1974). Local boards of education are not agents of the state, however, in performing each and every mandated function. *Cheshire* v. *McKenney,* 182 Conn. 253, 257, 438 A.2d 88 (1980). Local boards of education act as agents of the state when fulfilling the statutory duties imposed upon them by the legislature in light of the state constitutional mandate to furnish public education. *Cheshire* v. *McKenney,* supra, 257–58. Local boards of education also are agents of the towns, subject to the law governing municipalities, when acting on behalf of the municipality in its function of mandating control over the public schools within the municipality's limits. Id., 258–59; *Cahill* v. *Board of Education,* supra, 101–102; see General Statutes §§ 10-220, 10-240.

"In determining whether a local school board is afforded the protections consistent with the doctrine of sovereign immunity, the courts look to whether the suit would operate to control or interfere with the activities of the state. *Cahill* v. *Board of Education,* supra, 102; *Lostumbo* v. *Board of Education,* 36 Conn. Sup. 293, 295, 418 A.2d 949 (1980). The maintenance of school property is not encompassed within the educa-

tional activities of the state. *Lostumbo* v. *Board of Education,* supra, 294–95. The funding source for such building and maintenance is primarily a local responsibility. Id. We conclude that a local school board acting to recover damages arising from the construction of the physical plant of a school building is not acting as a state agent and, therefore, would not be entitled to employ the doctrine of sovereign immunity as a shield from the defense of the statute of limitations." *Board of Education* v. *Dow Chemical Co.,* supra, 142–43.

The Supreme Court further articulated the appropriate test as follows. "[A] local board of education is bound by and may sue or be sued on contracts in the same manner as municipal corporations. 17 McQuillin, Municipal Corporations (3d Ed. 1968 Rev.) § 49.60, p. 310; 1A Antieau, Municipal Corporation Law (1982) § 10.08; see *Light* v. *Board of Education,* 170 Conn. 35, 41, 364 A.2d 229 (1975); *Milford Education Assn.* v. *Board of Education,* 167 Conn. 513, 520, 356 A.2d 109 (1975); *Waterbury Teachers Assn.* v. *Board of Education,* 162 Conn. 390, 416, 294 A.2d 546 (1972). A breach of contract between a local board of education and its employees does not give rise to a conclusion that such an action would operate to control the activities of the state or subject it to liability. Employment contracts in such circumstances remain primarily the function of the local communities, and any damages resulting from a breach of these contracts would be paid by the community, not the state. *Mt. Healthy School District Board of Education* v. *Doyle,* 429 U.S. 274, 280, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977); *Lostumbo* v. *Board of Education,* 36 Conn. Sup. 293, 296, 418 A.2d 949 (1980); cf. *Somers* v. *Hill,* 143 Conn. 476, 479–80, 123 A.2d 468 (1956). Sovereign immunity is therefore inapplicable in this case." *Cahill* v. *Board of Education,* supra, 102.

The factors to consider in making the final determination of whether the municipality is acting within a governmental capacity so as to allow it to invoke the doctrine of sovereign immunity are well stated in *Lostumbo* v. *Board of Education,* supra. "The court must determine whether, in fact, the state is the real party in interest by examining 'the essential nature and effect of the proceeding' and whether a judgment would 'operate to control the activities of the state or subject it to liability. . . . ' *Somers* v. *Hill,* [supra, 479–80]. The alleged tortious conduct of a local board in these circumstances has no bearing on the state's activities. In addition, funding education, although increasingly regulated by the state, remains primarily the function of the towns. Any judgment to be paid would come from local coffers. The town, not the state, would be the real party against whom relief would be sought." (Footnote omitted.) *Lostumbo* v. *Board of Education,* supra, 295–96.

*Board of Education* v. *Dow Chemical Co.,* supra, is very similar to this case. In that case, a school board sought to recover for damages to the roofs of two schools allegedly caused by the use of the defendant's insulation product. The court denied the plaintiff's motion to strike the defendant's special defense of statute of limitations. In so doing, the court reasoned that "a local school board acting to recover damages arising from the construction of the physical plant of a school building is not acting as a state agent and, therefore, would not be entitled to employ the doctrine of sovereign immunity as a shield from the defense of the statute of limitations." *Board of Education* v. *Dow Chemical Co.,* supra, 143.

The trial court in this case, relying on *New Haven* v. *Torrington,* 132 Conn. 194, 204, 43 A.2d 155 (1945), held that Connecticut has extended immunity from a statute of limitations defense to municipalities when

suing to vindicate "public or governmental rights as opposed to private or proprietary rights." The court was correct. A public right is one with statewide implications affecting all of the people of the state, as opposed to one in which only the inhabitants of a particular political subdivision are interested. *Spitzer* v. *Waterbury,* 113 Conn. 84, 87, 154 A.2d 157 (1931); *Board of County Commissioners* v. *Willett,* 49 Okla. 254, 152 P. 365 (1915); 51 Am. Jur. 2d, Limitation of Actions § 412. This distinction is critical, for "[i]n a sense, every right possessed by a municipal corporation is a public right, and every class of property held by it is held in its public capacity, and for public use, but for the purpose of distinguishing such rights, as only that part of the public included within the corporate limits of a municipality are interested in, from such rights in which all the people in the State are interested, the former class is designated by law writers and courts as 'private rights,' and the terms 'public rights,' 'public uses' and 'public capacity' are used only with reference to such rights, uses and capacities, as all the people of the state are alike interested in." *Chicago* v. *C. & N.W. Ry. Co.,* 163 Ill. App. 251, 254 (1911).

Applying this narrow definition here, it is clear that the city's contract and negligence claims against the third party defendants concern "private rights" and not rights in which all people of the state are interested. Although the state supplies substantial financial support to the building of public schools, the construction of a public school by the city in this case is clearly a local function. The ultimate and total responsibility under the school construction contracts involved here vests with the city.

The court did not err in concluding that the umbrella of governmental immunity did not cover the city from the special defense of statute of limitations.

## II

## WHICH STATUTE OF LIMITATIONS APPLIES

The city argues that General Statutes § 52-584a[6] operates to extend to seven years the time during which an action may be brought to recover damages for delicts of an architect or professional engineer. In rejecting this claim, the trial court held that this interpretation ignores the effect of General Statutes § 52-584a (d) which provides: "Nothing in this section shall be construed to extend the period prescribed by the laws of this state for the bringing of any action." It concluded that this proviso indicates that General Statutes § 52-584a must be superimposed on existing statutes of limitations.

In considering the city's claims, we are guided by well known canons of statutory construction. "[S]tatutes should be construed so that no part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment." (Citation omitted.) *Charlton Press, Inc.* v. *Sullivan,* 153 Conn. 103, 109, 214 A.2d 354 (1965). In interpreting two separate acts, if this court " 'can by any fair interpretation find a reasonable field

---

[6] General Statutes § 52-584a provides in pertinent part as follows: "(a) Notwithstanding any provision of the general statutes, no action or arbitration, whether in contract, in tort, or otherwise, (1) to recover damages (A) for any deficiency in the design, planning, contract administration, supervision, observation of construction or construction of an improvement to real property; (B) for injury to property, real or personal, arising out of any such deficiency . . . or (2) for contribution or indemnity which is brought as a result of any such claim for damages shall be brought against any architect or professional engineer performing or furnishing the design, planning, supervision or observation of construction or construction of such improvement more than seven years after substantial completion of such improvement. . . . (d) Nothing in this section shall be construed to extend the period prescribed by the laws of this state for the bringing of any action."

of operation for both statutes without destroying or perverting their evident meaning and intent, it is the duty of the courts to do so, thus reconciling them and according to them concurrent effect.' " (Citations omitted.) *Waterbury Teachers Assn.* v. *Furlong,* 162 Conn. 390, 404–405, 294 A.2d 546 (1972); *Daley* v. *Liquor Control Commission,* 166 Conn. 97, 101, 347 A.2d 69 (1974). *State ex rel. Kennedy* v. *Frauwirth,* 167 Conn. 165, 168, 355 A.2d 39 (1974); *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978).

It is also clear that "[w]here the meaning of a statute is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. Its unequivocal meaning is not subject to modification by way of construction. *Holmquist* v. *Manson,* 168 Conn. 389, 393, 362 A.2d 971 (1975); *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36 (1967); *State* v. *Springer,* 149 Conn. 244, 248, 178 A.2d 525 (1962)." *Connecticut State Board of Labor Relations* v. *Board of Education,* 177 Conn. 68, 73, 411 A.2d 28 (1979). Finally, if construction of a statute is necessary, " 'a court considers its legislative history, language, purpose and the circumstances surrounding its enactment. *Delinks* v. *McGowan,* 148 Conn. 614, 618, 173 A.2d 488; *Cassidy* v. *Tait,* 140 Conn. 156, 160, 98 A.2d 808.' *State* v. *Sober,* 166 Conn. 81, 91n, 347 A.2d 61 [1974]." *Winchester* v. *Connecticut State Board of Labor Relations,* 175 Conn. 349, 356, 402 A.2d 332 (1978).

The city's argument fails on all of these canons of statutory construction. In construing subsection (d) of General Statutes § 52-584a as part of the overall statute, the court made a cogent and logical conclusion. Any other interpretation would render subsection (d) meaningless. The city claims that subsection (d) was intended to make certain that this seven year statute would not be applied retroactively to any pending claim. Even under this argument, subsection (d) would become

meaningless in a few years. Nor does this argument find support in the language of subsection (d). A close look at the provisions of § 52-584a supports the trial court's view. That section states that, notwithstanding any provision of the general statutes, no "action or arbitration, whether in contract, in tort, *or otherwise,* . . . shall be brought . . . more than seven years after substantial completion of [the work]." (Emphasis added.) The use of the phrase "or otherwise" shows that the act was intended to act as a seven year outer limit for any and all types of claims that might be brought by court action or arbitration.

It may be argued that the fact that contract and tort actions are specifically mentioned in General Statutes § 52-584a evidences an intent that the new seven year statute be *the* statute of limitations for actions involving architects and engineers. This inference is rebutted, however, by the opening phrase of General Statutes § 52-584a which states "notwithstanding any provision of the General Statutes," by the language of § 52-584a (d), and by the entire background of § 52-584a.

A review of the state of the law at the time General Statutes § 52-584a was passed is necessary to understand clearly the law's intent of the new act. Two emerging trends in modern tort law, the fall of the privity barrier and the death of the "completed and accepted" rule, greatly increased architect's and engineer's potential liability. See 2 Restatement (Second), Torts § 385; Prosser, Torts § 104. Under the "completed and accepted" rule, the liability of a design professional or builder terminated when the improvement was finished and accepted by the owner. See *Mann* v. *Leake & Nelson Co.,* 132 Conn. 251, 43 A.2d 461 (1945). In *Coburn* v. *Lenox Homes, Inc.,* 173 Conn. 567, 378 A.2d 599 (1977), our Supreme Court eroded this rule by upholding a negligence action by a subsequent purchaser of a house against the defendant, who

had furnished a defective septic system to the original purchaser of the house. In so doing, the court stated: "The revolution in the law of negligence which began with *MacPherson* v. *Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 [1916], and which resulted in recognition that privity was not a legitimate concern in negligence actions has finally produced the general rule 'that the seller is liable for negligence in the manufacture or sale of any product which may reasonably be expected to be capable of inflicting substantial harm if it is defective.' " (Citation omitted.) Id., 574. The effect of these legal developments on architects and engineers was to extend their liability beyond the date of completion of an improvement to all foreseeable users. See, e.g., *Laukkanen* v. *Jewel Tea Co., Inc.,* 78 Ill. App. 2d 153, 222 N.E.2d 584 (1966).

The American Institute of Architects, the National Society of Professional Engineers and the Associated General Contractors responded to these developments by endorsing a model act, and legislatures in some thirty states passed laws incorporating some of the provisions of the act. Cotter, "Limitation of Actions Statutes for Architects and Builders—Blueprints for Non-Action," 18 Cath. U.L. Rev. 361 (1969). Commenting upon this type of legislation, Cotter, supra, 367-68, states that "statutes requiring actions to be brought only within the stated time period may explicitly stipulate that the enactment neither extends nor limits periods otherwise prescribed for commencement of any action, *and thus expressly incorporate other provisions to govern the time period for bringing the action once the injury has occurred.*" (Emphasis added.) It is clear, given this history, that the model act was drafted not to preempt existing statutes of limitations but to provide these professions additional protection.[7]

---

[7] Several other jurisdictions have construed statutes similar to General Statutes § 52-584a and have concluded that such statutes establish an outer limit only. See *Lee* v. *Fister,* 413 F.2d 1286 (6th Cir. 1969) (Kentucky law);

Finally, were there any question of construction of subsection (d), the legislative history of General Statutes § 52-584a supports the trial court's conclusion. When General Statutes § 52-584a was enacted in 1969, there were two situations not covered by the general statutes of limitations contained in §§ 52-584 and 52-576: arbitration proceedings and actions based on negligent failure to warn. Arbitration proceedings, not being common law actions, are not subject to statutes which limit the time for bringing actions. *Skidmore, Owings and Merrill* v. *Connecticut General Life Ins. Co.,* 25 Conn. Sup. 76, 197 A.2d 83 (1963). Therefore, General Statutes § 52-584a, since it especially includes arbitration, is the only limit on demands for arbitration involving architects and engineers. Secondly, under the negligence statute of limitations; General Statutes § 52-584; the Supreme Court held that "[b]ecause the negligent failure to warn is a continuing course of conduct, the statute of limitations does not begin to run until the course of conduct is completed. *Prokolkin* v. *General Motors Corporation,* 170 Conn. 289, 298, 365 A.2d 1180 (1976); *Handler* v. *Remington Arms Co.,* 144 Conn. 316, 321, 130 A.2d 793 (1957)." *Cross* v. *Huttenlocher,* 185 Conn. 390, 400, 440 A.2d 952 (1981). Under this theory, without General Statutes § 52-584a, the legal door would be open to a negligence action years after completion of construction or improvement, based upon a claimed breach by an architect or engineer of a continuing duty to warn of a defect.

---

*Federal Reserve Bank* v. *Wright,* 392 F. Sup. 1126 (E.D. Va. 1975) (Virginia law); *Grissom* v. *North American Aviation, Inc.,* 326 F. Sup. 465 (M.D. Fla. 1971) (Florida law); *Benning Construction Co.* v. *Lakeshore Plaza Enterprises,* 240 Ga. 426, 241 S.E.2d 184 (1977); *R.L. Sanders Roofing Co.* v. *Miller,* 153 Ga. App. 225, 264 S.E.2d 731 (1980); *Landon* v. *William Bros. Concrete Co.,* 149 Ga. App. 699, 256 S.E.2d 99 (1979); *Lamb* v. *Wedgewood South Corporation,* 308 N.C. 419, 302 S.E.2d 868 (1983); *O'Connor* v. *Abraham Altus,* 67 N.J. 106, 335 A.2d 545 (1975); *Misitis* v. *Steel City Piping Co.,* 441 Pa. 339, 272 A.2d 883 (1971); *Virginia Military Institute* v. *King,* 217 Va. 751, 232 S.E.2d 895 (1977).

The following remarks from the General Assembly also indicate the intent behind General Statutes § 52-584a. "Nothing in this act will be construed to extend the period of the statute of limitation *in all other matters.*" (Emphasis added.) 13 S. Proc., Pt. 5, 1969 Sess., p. 2129. (Remarks of Senator Jackson.) Representative Stecker, in discussing the bill, stated as follows: "I think that architects and engineers are in a little bit of a peculiar situation, different than what most professions are in, in that as it now stands as the law now stands, not only are we responsible for a building for our lifetime but our estates are responsible for that building as well. To put it in very simple terms, if a person 60 years from now is going down a [flight of] stairs holding on to a handrail and the handrail fails, even if I'm long gone from this earth, that person would have recourse to sue my wife if she is still alive or my estate for the action I took perhaps 10 years ago." 13 H.R. Proc., Pt. 8, 1969 Sess., p. 3919. Representative O'Neill stated that "[t]he big problem that I think we have here with architects is, more than any other area, what happens to them upon retirement when they get out of the business of being an architect and they are no longer busy at their work. Under the present situation, they still must maintain insurance, liability insurance, for the rest of their lives, even though they are no longer practicing. They no longer have architectural income but they still must maintain a liability policy. This bill would allow them after the 7-year period to finally get out from under the burden and drop that policy. This is a great expense and unnecessary expense. From the analysis at the hearings we had, we found no buildings that caused trouble after 7 years. The architect is protected, the public is protected and I think it is time that we remove the very unfair burden that architects and engineers carry as a result of having no statute of limitations whatsoever to protect them." 13 H.R. Proc., Pt. 8, 1969 Sess., p. 3920.

There is other authority rebutting the city's claim concerning the interpretation of General Statutes § 52-584a. The Supreme Court of Tennessee faced the identical issue in *Watts* v. *Putnam County,* 525 S.W.2d 488 (Tenn. 1975). "These sections [Tenn. Code Ann. §§ 28-314 to 28-318] deal with actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of such deficiency.

"Section 28-314 provides in substance that all such actions shall be brought within four years after substantial completion of the improvement. . . . Section 28-316, provides in substance that nothing in 28-314 to 28-318 shall be construed as *extending the period or periods* provided by the laws of Tennessee for the bringing of any action . . . .

"The four-year statute of limitations as imposed by § 28-314, is but an outer limit or ceiling. This is not a conventional statute of limitations. Sec. 28-316 makes it clear that these statutes do not extend the 'period, or periods provided by the laws of Tennessee . . . for the bringing of any action.' This wording effectively says that the limitations imposed by Sec. 28-304 (one-year personal injury) and 28-305 (three-year property damage) are applicable in a limited sense. Sec. 28-314 et seq. are simply superimposed upon existing statutes. Suits for personal injuries and for property damage must be brought within one and three years, respectively, from and after the date of injury or damage, or the date of such injury or damage was discovered or should have been discovered with reasonable care and diligence, subject to the ceiling imposed by Sec. 28-314 et seq. . . .

"These statutes may not be construed to extend any existing statute of limitation, but they must be construed to curtail and limit all other periods to the four-year period . . . . " Id., 490–91.

We conclude, from all of the above, that § 52-584a was not intended to give more time than the contract and negligence statutes of limitation may give when applicable, as in the present case. The intent of the seven year statute, and its clear mandate, was to create a seven year absolute maximum on actions against architects and engineers, based upon the finite barrier of substantial completion, regardless of the nature of the claim, while leaving any other lesser limitations in effect.

The court was not in error in concluding that the third party plaintiff's contract action against Barnes was barred by General Statutes § 52-576 and its negligence claims against all three third party defendants was barred by General Statutes § 52-584.

There is no error.

In this opinion the other judges concurred.