**WEST HAVEN SCHOOL DISTRICT**

v.

**OWENS–CORNING FIBERGLAS CORP., et al.**

**Civ. No. H–85–1056 (AHN).**

United States District Court,
D. Connecticut.

Aug. 9, 1988.

Richard L. Gross, James F. Early, Sklarz & Early, PC, New Haven, Conn., for plaintiff.

Patrick J. Flaherty, Cooney, Scully & Dowling, Hartford, Conn., Bruce G. Tucker, Roberts, Carroll, Feldstein & Tucker, Providence, R.I., Richard R. Steinmetz, Paul W. Orth, John T. Harris, Shipman & Goodwin, Henry C. Ide, Trowbridge, Ide & Greenwald, PC, Hartford, Conn., Louis A. Highmark, Jr., Everett F. Fink, Fink and Highmark, West Hartford, Conn., William O. Riiska, Robert J. Cathcart, Shipman & Goodwin, Hartford, Conn., Robert N. Reynolds, Jr., Stephen P. Sachner, Andrew D. Coleman, Hitt, Sachner & Coleman, Cheshire, Conn., Irene C. Warshauer, Anderson, Russell, Kill & Olick, PC, New York City, Joseph Adinolfi, Jr., Joseph P. Fasi, Joseph A. O'Brien, Joseph C. Morelli, Adinolfi, O'Brien & Hayes, PC, Hartford, Conn., for defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NEVAS, District Judge.

The West Haven School District brought this product liability action on December 9, 1985, against seven manufacturers and distributors of asbestos and asbestos-contain-

ing materials, to recover public funds it spent in 1983 and 1984 to abate health hazards allegedly created by the presence of those materials in twelve West Haven School District buildings. Proceeding in diversity under Connecticut's comprehensive Product Liability Act, Conn.Gen.Stat. Sections 52–572m *et seq.,* the plaintiff seeks compensatory and punitive damages. After the defendants answered, the plaintiff sought to voluntarily dismiss the action without prejudice, so that it could join in a national class of school districts pursuing a family of similar claims in the so-called "Philadelphia class action" filed in the Eastern District of Pennsylvania on January 17, 1983.[1] The defendants opposed dismissal, taking the position that this action is barred by the applicable statute of limitation. In order to resolve the statute of limitation question, the parties by formal stipulation agreed to litigate that issue only, with the defendants further agreeing that if the plaintiff prevailed they would not oppose renewal of the voluntary dismissal motion. Stipulation, filed October 14, 1986 (filing no. 54).

The defendants have raised their statute of limitation challenge by means of the motion for summary judgment now before the court; oral argument was heard on February 2, 1988, and the parties subsequently filed additional briefs and authority to support their positions. For the reasons that follow, the motion for summary judgment is denied.

### Facts

The general sequence of events leading to this lawsuit is undisputed, although the parties hotly contest the significance of and inferences to be drawn from the voluminous documentation which recounts those events. A very brief summary will put the discussion that follows in some perspective.

Up until 1971, several West Haven School District ("School District") buildings were constructed or renovated using materials containing asbestos manufactured or distributed by the defendants. In February 1977, the Connecticut Department of Education ("DOE") advised the School District of health hazards associated with asbestos. At about that time, the School District was aware that asbestos was present in at least two of its schools; however, the DOE determined that that asbestos posed no hazard and so it was not removed. That same year, the Connecticut legislature defined asbestos as a carcinogen. In May 1979, responding to a state legislator's inquiry, the School District confirmed that asbestos was present in two schools but that it was understood to be non-hazardous.

In late 1979, the School District's buildings supervisor attended a state-sponsored seminar on the potential hazards of asbestos in schools, and received U.S. Environmental Protection Agency documents on the issue. Soon thereafter, he sought a budget allocation to remove asbestos in the two schools; the state did not require the remaining School District buildings to be inspected at that time, but in late 1980 the School District learned that some asbestos-containing material was present in a third school. In mid–1980, Congress enacted the Education of the Handicapped Act and the Asbestos School Hazard Detection and Control Act, 20 U.S.C. Sections 1411 and 3601–3611, and in September federal agencies proposed regulations for detecting hazardous conditions in the nation's schools and for implementing loan programs to abate them; the regulations were promulgated in May 1982. Meanwhile, in late 1980, the School District took action to evaluate its overall potential asbestos problem and to develop an abatement program; it began to inspect its facilities in December 1982, and by March 1983 had discovered hazardous asbestos in twelve buildings, including the original three schools. City funds for abatement were approved in June 1983, and the asbestos was removed by January 1984. On December 9, 1985, the

---

1. *In re School Asbestos Litigation,* No. 83–1268. The plaintiff class was certified on September 28, 1984 at 104 F.R.D. 422 (E.D.Pa.1984), *aff'd* 789 F.2d 996 (3d Cir.), *cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 and 479 U.S. 915, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986). All the defendants in the present action are also defendants in the Philadelphia suit.

School District filed this lawsuit to recover the funds expended in abatement.

### Discussion

This motion presents the court with four distinct but interlocking issues. Three are predicate matters, which the court must consider before reaching the merits of the summary judgment motion. First is whether the West Haven School District is insulated from the defendants' statute of limitation defense by virtue of sovereign immunity. Second, whether this action is governed by the three-year statute of limitation provided for product liability claims in Conn.Gen.Stat. Section 52–577a, or by the two-year statute of limitation provided in Conn.Gen.Stat. Section 52–577c ("notwithstanding" Section 52–577a). Third, whether the applicable statute of limitation was tolled when the Philadelphia class action was filed on January 17, 1983, or whether it ran until this lawsuit was filed on December 9, 1985. Finally, with respect to the summary judgment motion itself, the court must determine whether or not there is a genuine issue of material fact regarding the time when this cause of action accrued and, therefore, when the statutory limitation period began to run.

### Immunity from Statute of Limitation

■ The West Haven School District contends as a threshold matter that it is immune from a statute of limitation defense because under Connecticut law it is cloaked with the sovereign immunity of the state. If the School District is correct, then the defendants cannot meet their burden of showing the plaintiff unable to surmount an affirmative defense that would bar this suit, and their motion for summary judgment must be denied. C. Wright, A. Miller, and M. Kane, *Federal Practice & Procedure: Civil* Section 2734 (2d ed. 1983 & Supp.1987) (and authority cited therein) (summary judgment is appropriate where a defendant's Rule 56 motion raises at least one legally sufficient defense that would bar the plaintiff's claim and that involves no triable issues of fact). *See also Perille*

*v. Raybestos–Manhattan–Europe, Inc.,* 196 Conn. 529, 543, 494 A.2d 555, 563 (1985).

Ruling in an action for breach of a school construction contract and for related negligence, the Connecticut appellate court recently laid out a cogent summary of the law of sovereign immunity as it would apply in the present case:

"The Connecticut Supreme Court has repeatedly stated that, as respects public rights, 'a subdivision of the state, acting within its delegated governmental capacity, is not impliedly bound by the ordinary statute of limitations.' *State v. Goldfarb,* 160 Conn. 320, 326, 278 A.2d 818 (1971); *New Haven v. Torrington,* 132 Conn. 194, 204, 43 A.2d 455 (1945); *Bridgeport v. Schwarz Bros. Co.,* 131 Conn. 50, 54, 37 A.2d 693 (1944)." (Emphasis added.) *Department of Transportation v. Canevari,* 37 Conn.Sup. 899, 900–901, 442 A.2d 1358 (1982). The distinction between governmental and nongovernmental functions was clearly stated in *Winchester v. Cox,* 129 Conn. 106, 109, 26 A.2d 592 (1942): "The functions of a municipal corporation fall into two classes, those of a governmental nature, where it acts merely as the agent or representative of the state in carrying out its public purposes, and those of a proprietary nature, where it carries on activities for the particular benefit of its inhabitants." (Citations omitted.)

Although this case involves the city itself [2] rather than its board of education, the reasoning of the court in *Board of Education v. Dow Chemical Co.,* 40 Conn.Sup. 141, 142–43, 482 A.2d 1226 (1984), concerning sovereign immunity, is instructive. "The protections offered by the doctrine of sovereign immunity have been extended to agents of the state acting in its behalf. *Cahill v. Board of Education,* 187 Conn. 94, 101, 444 A.2d 907 (1982). A board of education is an agency of the state in charge of education in a town. *Murphy v. Berlin Board of Education,* 167 Conn. 368,

---

**2.** The present case involves a school district, which stands in the same relation to a local board of education as does a city. Conn.Gen. Stat. Sections 10–220, 10–240, and 10–241.

372, 355 A.2d 265 (1974). Local boards of education are not agents of the state, however, in performing each and every mandated function. *Cheshire v. McKenney*, 182 Conn. 253, 257, 438 A.2d 88 (1980). Local boards of education act as agents of the state when fulfilling the statutory duties imposed upon them by the legislature in light of the state constitutional mandate to furnish public education. *Cheshire v. McKenney*, supra, 257–58 [438 *A*.2d 88]. Local boards of education also are agents of the towns, subject to the law governing municipalities, when acting on behalf of the municipality in its function of mandating control over the public schools within the municipality's limits. Id., 258–59 [438 A.2d 88]; *Cahill v. Board of Education*, supra, 101–102 [444 A.2d 907]; see General Statutes Section 10–220, 10–240....

. . . . .

[I]n making the final determination of whether the municipality is acting within a governmental capacity so as to allow it to invoke the doctrine of sovereign immunity ... "The court must determine whether, in fact, the state is the real party in interest by examining 'the essential nature and effect of the proceeding' and whether a judgment would 'operate to control the activities of the state or subject it to liability ...'["] *Somers v. Hill*, [143 Conn. 476, 479–80, 123 A.2d 468 (1956) ]." *Lostumbo v. Board of Education*, [36 Conn.Sup. 293, 295–96[, 418, A.2d 949 (1980) ].

*R.A. Civitello Co. v. New Haven*, 6 Conn. App. 212, 217–20, 504 A.2d 542, 544–46 (1986). The court went on to observe that "Connecticut has extended immunity from statute of limitations defense to municipalities when suing to vindicate 'public or governmental rights as opposed to private or proprietary rights.'" *Id.*, 6 Conn.App. at 220–21, 504 A.2d at 546 (citing *New Haven v. Torrington*, 132 Conn. 194, 204, 43 A.2d 455, 460 (1945)).

A public right is one with statewide implications affecting all of the people of the state, as opposed to one in which only the inhabitants of a particular political subdivision are interested. *Spitzer v. Waterbury*, 113 Conn. 84, 87, 154 A. 157 (1931); *Board of County Commissioners v. Willett*, 49 Okla, 254, 152 P. 365 (1915); 51 Am.Jur.2d, Limitation of Actions Section 412. This distinction is critical, for "[i]n a sense, every right possessed by a municipal corporation is a public right, and every class of property held by it is held in its public capacity, and for public use, but for the purpose of distinguishing such rights, as only that part of the public included within the corporate limits of a municipality are interested in, from such rights in which all the people in the State are interested, the former class is designated by law writers and courts as 'private rights,' and the terms 'public rights,' 'public uses' and 'public capacity' are used only with reference to such rights, uses and capacities, as all the people of the state are alike interested in." *Chicago v. C. & N.W. Ry. Co.*, 163 Ill.App. 251, 254 (1911).

*Civitello*, 6 Conn.App. at 221, 504 A.2d at 546.

An alternative analysis looks not to the effect of the acts at issue, but to their nature: "Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. On the other hand, ministerial acts [, for which a municipality is not immune,] are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." *Gauvin v. New Haven*, 187 Conn. 180, 184, 445 A.2d 1, 3 (1982) (citations omitted).

*Civitello* concluded that the negligence and construction contract claims being pressed in that case concerned "private rights" rather than rights in which all people of the state were interested, and that the construction of the school at issue was clearly a local function; therefore, the court held, governmental immunity was not available to shield the city from a statute of limitation defense. Similarly, the trial court in *Board of Education v. Dow Chemical Co.*, 40 Conn.Sup. 141, 143, 482 A.2d 1226, 1228 (1984), reasoned that a local school board's "maintenance of school

property is not encompassed within the educational activities of the state," and that "funding ... for such building and maintenance is primarily a local responsibility." In *Dow Chemical,* the school board sought to recover for property damages incurred as a result of negligently manufactured roof insulation. The court concluded that "a local school board acting to recover [property] damages arising from the construction of the physical plant of a school building is not acting as a state agent and, therefore, would not be entitled to employ the doctrine of sovereign immunity as a shield from the defense of the statute of limitations." *Id.,* 40 Conn.Sup. at 143, 482 A.2d at 1228.

The defendants urge that *Civitello* and *Dow Chemical* are dispositive of the present case. The plaintiff, however, argues that three factors distinguish this case from the rule of *Dow Chemical,*[3] and establish that in incurring the expenses which it seeks to recover through this lawsuit the School District was acting in a delegated governmental capacity. First, that in removing the asbestos materials the School District was not undertaking "mere building maintenance," but rather acted at the direction of, and therefore as agent of, the state government in furthering the state's function of protecting the health, safety, and welfare of school children, teachers, employees, and the public. Second, that the state reimbursed the School District for approximately 70% of the cost of removing the asbestos materials.[4] Third, that failure of this suit would "interfere with the activities of the state" by discouraging or even precluding abatement of public health hazards. Thus, the plaintiff reasons, the School District's actions directly affected the state's interest, both substantively and financially, thereby entitling the plaintiff to the benefits of governmental immunity.

The court is not persuaded that these factors, assuming they exist, compel a departure from *Civitello* and *Dow Chemical.* In certain respects the presence of asbestos in building materials creates a unique problem for those who own and manage older buildings, but the functional effect of coping with the problem is no different from many other construction retrofit or rehabilitation projects undertaken by a local entitity "for the particular benefit of its inhabitants" but pursuant to state regulations. State mandates for asbestos removal are not unlike state requirements for upgrades to comply with electrical wiring or floor load standards. Moreover, compliance with such mandates is a ministerial function, not subject to the School District's discretion. The fact that tax funds (and even perhaps state monies) were used to accomplish the work does not distinguish this case from other public school construction disputes. On some relatively abstract level, of course, everyone in Connecticut is affected by the removal of asbestos from West Haven's school buildings, but as a practical matter the issue directly implicates the rights and interests of only the people of West Haven. In short, by any of the various tests for determining eligibility for sovereign immunity this plaintiff in these circumstances is not exempt from the operation of the defendants' statute of limitation defense.[5]

*Applicable Statute of Limitation*

■ Product liability actions in Connecticut are generally subject to the three-year statute of limitation provided in Conn.Gen.

---

3. The plaintiff's brief does not mention or discuss *Civitello.*

4. The court finds no substantiation in the record for this assertion, and the defendants in their reply brief state they were unable to locate any evidence of state reimbursement. The plaintiff's brief at p. 12 states that "an application for a state grant for each building was made in 1985" and refers to defendants'. exhibit G, no. 69, but there is no indication that such funds were granted.

5. It has also been noted by another federal district court considering this issue in a very similar school-asbestos-removal case, that "the overwhelming weight of authority in other jurisdictions indicates that local school districts are not immune from the running of statutes of limitation." *County of Johnson County v. United States Gypsum Co.,* 580 F.Supp. 284, 289 (E.D. Tenn.1984).

Stat. Section 52–577a,[6] which has traditionally been applied to claims for damages arising from exposure to asbestos products. *See Bauer v. Johns–Manville Corp.*, 599 F.Supp. 33, 34–35 (D.Conn.1984) (Blumenfeld, J.); *Sawicki v. Central Vermont Railway, Inc.*, Civil No. H–87–744 (D.Conn. Sept. 21, 1987) (ruling on motion to dismiss) (Blumenfeld, J.); *In re Connecticut Asbestos Workers*, C.M.L. No. 3 (D.Conn. Mar. 8, 1984) (ruling on motions to amend) (Blumenfeld, J.). The defendants argue, however, that asbestos-related product liability claims should instead be governed by Conn. Gen.Stat. Section 52–577c,[7] which by way of exception to Section 52–577a created a two-year statute of limitation for "personal injury or property damages caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the environment." The plaintiff acknowledges that asbestos comes within the technical definition of substances encompassed by Section 52–577c, but contends that the statute, which was enacted in 1984 as part of Connecticut's Clean Water Act, was intended to apply only to releases of hazardous materials from industrial waste streams or toxic waste dumps into the ambient environment in a manner that would potentially affect groundwater and drinking water. If that is so, then Section 52–577c would not govern asbestos-related lawsuits such as the one now before the court. No Connecticut court appears to have yet addressed this question, but—notwithstanding the parties' elaborate parsing of the statute's language—this court's plain reading of the enactment as well as of the Clear Water Act's legislative history supports the narrower construction of Section 52–577c's scope of coverage.

Indeed, the legislature itself recently clearly indicated that it continues to regard Section 52–577a as the operative statute of limitation for asbestos-product actions when in 1987 it amended the statute to provide for a special thirty-year statute of repose for "any product liability claim ...

6. Conn.Gen.Stat. Section 52–577a provides in pertinent part:

(a) No product liability claim as defined in section 52–572m shall be brought but within three years from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered except that, subject to subsections (c), (d) and (e), no such action may be brought against any party nor may any party be impleaded pursuant to subsection (b) later than ten years from the date that the party last parted with possession or control of the product.

. . . . .

(g) The provisions of this section shall apply to all product liability claims brought on or after October 1, 1979.

7. Conn.Gen.Stat. Section 52–577c provides, in its entirety:

(a) For the purposes of this section: (1) "Environment" means any surface water, ground water, drinking water supply, land surface or subsurface strata or ambient air within the state or under the jurisdiction of the state; (2) "exposure" means any contact, ingestion, inhalation or assimilation, including irradiation; (3) "hazardous chemical substance or mixture" means any chemical substance or mixture for which there is a federal standard, including any law, requirement, tolerance, prohibition, action level or similar legal authority adopted by an agency pursuant to federal law, including any such standard or legal authority adopted by a state or local government pursuant to federal law, generally intended to prevent, reduce or mitigate the risk of a disease or class or type of diseases to an individual or individuals resulting from exposure to such chemical substance or mixture; (4) "hazardous pollutant" means any designated, specified or referenced chemical considered to be a "hazardous substance" under section 101(14) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. 9601(14); (5) "release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment.

(b) Notwithstanding the provisions of sections 52–577 and 52–577a, no action to recover damages for personal injury or property damage caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the environment shall be brought but within two years from the date when the injury or damage complained of is discovered or in the exercise of reasonable care should have been discovered.

(c) The provisions of subsection (b) of this section shall not apply to an action brought against (1) any municipal waterworks system established and operated under chapter 102 or any special act, (2) any regional water authority established under any general statute or special act, or (3) any water company as defined in section 16–1.

involving ... property damages caused by contact with or exposure to asbestos." Section 52–577a(e).[8] The court finds no basis for contriving a departure from the well-established three-year limitation period traditionally applied to asbestos product liability suits, and declines to do so here.

*Time of Tolling*

■ Six of the defendants take the position that for purposes of their motion for summary judgment the statute of limitation was tolled when the Philadelphia class action was brought on January 17, 1983. The seventh defendant, Keene Corporation ("Keene"), vigorously dissents, arguing in a separate brief on this issue that its codefendants' position is predicated upon an unsupportably broad reading of the only law they invoke in their behalf—*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); and *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713, *reh'g denied*, 415 U.S. 952, 94 S.Ct. 1477, 39 L.Ed.2d 568 (1974)—and that in any event the question must be resolved by reference to state, not federal, tolling law. *Board of Regents v. Tomanio*, 446 U.S. 478, 483–86, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980) (statutes of limitation are part of a state's substantive law, and where federal court applies state statute of limitation it must also apply that state's tolling principles).[9] Keene does not, however, suggest what the result of applying Connecticut law would be. The plaintiff correctly agrees that state tolling law controls, but contends that Connecticut law, too, would have caused the limitation period to be tolled with the filing of the Philadelphia class action.

■ Connecticut has no statute or decisional law regarding the tolling principles at issue here. The state's class action rules are very like their federal counterparts, however, and state courts interpreting those rules have looked to federal class action law for guidance. *Compare* Conn. Pr.Bk. Sections 86 to 90 *with* Rule 23, Fed.R.Civ.P. Moreover, based upon this principle, at least one Connecticut trial court has applied the *American Pipe* rule to state class action litigation. *Campbell v. New Milford Board of Education*, 36 Conn.Sup. 357, 423 A.2d 900 (1980). The question now before the court, therefore, is how *American Pipe* affects the case at bar.

*American Pipe*'s literal holding was that where a plaintiff class certification is denied for lack of numerosity, the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has declined to certify the class. 414 U.S. at 552–53, 94 S.Ct. at 765–66. As a policy matter, the Court viewed this rule as serving the principal purpose of Rule 23—efficiency and economy of litigation—while maintaining the general objective of statutes of limitation in that institution of the class action suit puts the defendants on notice of the number and generic identities of the potential plaintiffs who might participate in any judgment. "The intent of the *American Pipe* rule is to preserve the individual right to sue of the members of a proposed class until the issue of class certification has been decided. *Crown, Cork*, 462 U.S. at 354, 103 S.Ct. at 2397 (Powell, J., concurring)." *In re Agent Orange Product Liability Litigation*, 818 F.2d 210, 214 (2d Cir.1987). *See also Campbell v. New Milford Board of Education*, 36 Conn.Sup. at 364 n. 6, 423 A.2d at 905 n. 6 ("*American Pipe* ... established that ... the statute [of limitation] is tolled from the time the complaint was filed until the decision on class certification is made"). *Crown, Cork* held that *American Pipe*'s tolling principle applies to all asserted members of the plaintiff class, not only to

---

**8.** Section 52–577a(e) provides:

(e) The ten-year limitation provided for in subsection (a) shall not apply to any product liability claim, whenever brought, involving injury, death or property damage caused by contact with or exposure to asbestos, except that no such action may be brought by the claimant later than thirty years from the date that the claimant last had contact with or exposure to asbestos.

**9.** *See also Orticelli v. Powers*, 197 Conn. 9, 16, 495 A.2d 1023, 1028 (1985).

intervenors; thus, parties denied class certification who file plenary individual actions instead of seeking to intervene are also entitled to have the applicable limitation period suspended.

The defendant Keene correctly states that courts have generally read *American Pipe* and *Crown, Cork* rather narrowly, declining to expand them far beyond their facts. *Compare, e.g., Cullen v. Margiotta,* 811 F.2d 698, 720 (2d Cir.1987) (*"American Pipe* tolling is properly extended to claims of absent class members that involve the same evidence, memories, and witnesses as were involved in the initial putative class action"), *with Korwek v. Hunt,* 827 F.2d 874, 879 (2d Cir.1987) ("the tolling rule established by *American Pipe,* and expanded by *Crown, Cork,* was not intended to be applied to suspend the running of statutes of limitation for *class action suits* filed after a definitive determination of class certification" (emphasis added)).

In the present case, the Philadelphia class action was filed on January 17, 1983. On September 28, 1984, pursuant to Rule 23(b)(3), the court conditionally certified the plaintiff class consisting of "essentially all public school districts and private schools in the nation [seeking] to recover the costs incurred in undertaking asbestos abatement remedial action." *In Re Asbestos School Litigation,* 104 F.R.D. 422, 424 (E.D.Pa.1984). Pursuant to Rule 23(b)(1)(B) the court also certified a mandatory class for school districts seeking puni-

tive damages, and denied a request for Rule 23(b)(2) class certification. On appeal, the court of appeals upheld the Rule 23(b)(3) certification and the Rule 23(b)(2) denial, and reversed and vacated the Rule 23(b)(1)(B) mandatory class certification—rulings that were sustained on subsequent appeals. *In Re School Asbestos Litigation,* 789 F.2d 996 (3d Cir.) (rehearing and rehearing *en banc* was also sought by numerous individual parties and denied), *cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed. 117, and 479 U.S. 915, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986). Thus, there was a "definitive determination" of the class certification no earlier than when the appeals on that issue ran their course on October 20, 1986, and until that date the statute of limitation was suspended under *American Pipe* rule. Because by that time the present action had been filed, the *effective* tolling of the limitation period governing this lawsuit was when the Philadelphia class action was brought on January 17, 1983. Keyed to that date, the applicable three-year statute of limitation therefore requires that in order to be maintainable the plaintiff's cause of action must have accrued no earlier than January 17, 1980.

*Existence of Fact Questions for Trial*

The ultimate question presented on this summary judgment motion is whether the uncontroverted facts show that the three-year statute of limitation in this case began to run before January 17, 1980, or after that date.[10] The statute

**10.** As a general matter, summary judgment is properly granted where a review of the entire record demonstrates that "there is no genuine issue as to any material fact." Rule 56(c), Fed. R.Civ.P. Not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them. *Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 57–58 (2d Cir.1987). *See also Anderson v. Liberty Lobby,* 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue has been raised, the court must read the pleadings, resolve all ambiguities, and draw all reasonable inferences, against the moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (*per curiam* ); *Donahue,* 834 F.2d at 57.

A summary judgment motion can be an appropriate vehicle for presenting a statute of limitations argument. *See, e.g., DeLuca v. Atlantic Refining Co.,* 176 F.2d 421 (2d Cir.1949) (Hand, J.). However, as with all summary judgment motions, the burden is on the moving party initially to show the absence of any genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Unless the moving party (here the defendants) carries this burden, the party opposing summary judgment need not produce factual materials to supplement the well-pleaded allegations of [its] complaint. *Id.*
*Giannotti v. Foundry Cafe,* 582 F.Supp. 503, 505 (D.Conn.1984) (Eginton, J.).

The question of when a cause of action accrues, so as to start a statute of limitation run-

provides that the limitation period begins to run "when the ... property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered." Conn.Gen.Stat. Section 52–577a(a). "The time for bringing an action starts at the time of the occurrence of the alleged [tortious act] and not at the time when the person was injured." *Daily v. New Britain Machine Co.*, 200 Conn. 562, 584, 512 A.2d 893, 905 (1986) (discussing Section 52–577a). The harm to be alleged must have become actionable; that is, the plaintiff must have discovered all the essential elements of the cause of action it seeks to assert. In the present case, in addition to tortious conduct on the part of the defendants, there must have existed actual injury to the plaintiff School District, and the School District must have known that there was a causal connection between the conduct and the injury.

 The parties have conducted extensive discovery and furnished the court with voluminous documentation on the question of when the West Haven School District may be charged with having knowledge of the asbestos hazard in its buildings and of its responsibility for abatement, or should have had such knowledge, so as to generate this cause of action. The plaintiff contends flatly that it did not have the requisite knowledge, and cannot be held accountable for such knowledge, any earlier than March 1983. To succeed on their motion for summary judgment, the defendants must persuade the court that uncontroverted facts show that the plaintiff in fact had or should have had the necessary knowledge before January 17, 1980. This they have not done.

Instead, the defendants first suggest that the evidence proffered shows that by June 1977 "the School District had considerable knowledge with respect to the facts which ultimately resulted in the bringing of this lawsuit" and probably could have maintainted this action by that time. Memorandum of Law in Support of Motion for Summary Judgment, filing no. 67, (filed Nov. 16, 1987) at 27–29. They go on to claim that "by the end of 1979 the [D]istrict clearly was aware of the necessity to abate." *Id.* at 31. Finally, they argue that "[c]learly by the end of 1980 the School District had sustained a 'legal injury' within the scope of" the applicable law. *Id.* at 41.

In the last instance, of course, the plaintiff's lawsuit would have been timely filed. The court has reviewed the deposition testimony and documentary evidence and concludes that the defendants' own equivocation both accurately reflects the conflicting evidence on this question and points up the inappropriateness of resolving the matter by summary judgment. On the record now before the court, a rational trier of fact could well find for the nonmoving party— that is, could find that the School District did not have an actionable claim until after January 7, 1980—and thus the court must hold that there exists a "genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Clements v. County of Nassau*, 835 F.2d 1000, 1004 (2d Cir.1987). Accordingly, the defendants' motion for summary judgment must be denied. At this time, the court is inclined to have the case proceed to trial on a bifurcated basis in which the jury will

---

ning, is ordinarily a question of fact for a trier; consequently, a court cannot grant summary judgment for a defendant if there is a genuine dispute as to when the limitation period began. *See Hamilton v. Smith*, 773 F.2d 461, 465–66 (2d Cir.1985) (summary judgment precluded where there existed factual dispute as to when patient reasonably should have discovered medical malpractice); *Schmidt v. McKay*, 555 F.2d 30, 37–38 (2d Cir.1977) (summary judgment erroneously granted where there was genuine dispute over inferences to be drawn from otherwise undisputed facts regarding when plaintiff reasonably

should have discovered alleged fraud); *Saylor v. Lindsley*, 391 F.2d 965, 970 (2d Cir.1968) ("the possible existence of a material issue of fact, i.e., when the plaintiff did discover, or reasonably should have discovered, the facts which give rise to the action, prevents summary disposition of the suit on the limitations ground"); *Kern v. Hettinger*, 303 F.2d 333, 338–39 (2d Cir.1962) (plaintiff "entitled to his day in court" on disputed issue of when statute of limitation began to run); *Long v. Abbott Mortgage Corp.*, 424 F.Supp. 1095, 1099 (D.Conn.1976) (Newman, J.).

first decide whether the action comes within the applicable statute of limitation.

### Conclusion

The plaintiff is not shielded by sovereign immunity from the defendants' statute of limitation defense. This product liability action is subject to the three year statute of limitation provided in Conn.Gen.Stat. Section 52–577a, which limitation period was tolled at the time the Pennsylvania class action was filed on January 17, 1983. Because there exist genuine issues of fact material to whether this action accrued within the applicable limitation period, the defendants' motion for summary judgment on that basis is denied.

SO ORDERED.