[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Motion for Summary Judgment A. Dubreuil Sons, Inc. [154]
 MEMORANDUM OF DECISION
This is a negligence action for personal injuries sustained by the plaintiff, Judy Sandvig, on September 26, 1991. The original complaint, dated September 24, 1993, alleges Judy Sandvig fell in a hallway at the Jennings School in New London. Co-plaintiff Karl Sandvig, Judy Sandvig's husband, seeks loss of consortium damages. CT Page 3623
The original complaint named two defendants, A. Dubreuil 
Sons, Inc. (Dubreuil) and "John Doe." The complaint alleged Dubreuil was the general contractor for a renovation project at the Jennings School and created the condition which caused the plaintiff to fall.
The original complaint stated that "John Doe was a corporation, partnership, business, sole proprietorship or individual doing the tile work in the hallway in which the plaintiff fell at the Jennings School." Complaint, September 24, 1993, Count 3, paragraph 4, pp. 4-5. The complaint further alleged John Doe created the condition which caused the plaintiff to fall.
Subsequently, the plaintiffs filed an Amended Complaint dated April 22, 1996 [128] naming Colonial Carpet Tile, Inc. (Colonial Carpet) as a defendant, which was served on Colonial Carpet Tile, Inc. on May 17, 1996. Still later, the plaintiffs filed a Revised Amended Complaint dated July 12, 1996, [134], which is the operative complaint in this action.
The Revised Amended Complaint contains four counts. The first two counts are directed against the defendant, A. Dubreuil 
Sons, Inc.; the third and fourth counts are directed against Colonial Carpet Tile, Inc. On May 7, 1999, the court granted summary judgment in favor of Colonial Carpet Tile, Inc. on the third and fourth counts.
The negligence allegations against Dubreuil are as follows:
 "4. The defendant, through its agents, servants and/or employees negligently and carelessly created the defective condition in the hallway in which the plaintiff fell in one or more of the following ways, inter alia,
 a) Left the tile floor unfinished exposing an area of the underlying rough and uneven cement; and/or
b) Failed to smooth the exposed cement; and/or
 c) Failed to cover the exposed cement with a temporary safe surface; and/or
 d) Failed to finish the job by placing tile; and/or CT Page 3624
e) Failed to warn of the defective condition; and/or
 f) Failed to cordon off the area in which the tiles were missing."
Revised Amended Complaint, July 12, 1996, pp. 1-2. [134]
Dubreuil filed a Motion for Summary Judgment dated January 6, 1997 [154] claiming that the plaintiffs' action is barred by C.G.S. § 52-584, the negligence, personal injury statute of limitations.
Section 52-584 reads as follows:
 "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed." C.G.S. § 52-584.
Judy Sandvig's fall occurred on September 26, 1991. The original complaint is dated September 24, 1993. The original writ, summons and complaint were delivered to a deputy sheriff on that date, September 24, 1993. See C.G.S. § 52-593a. Service was actually made on Dubreuil on October 5, 1993.[1]
Section 52-584 has two branches. The first branch requires that the action be brought within two years of the date when the injury is first sustained. Judy Sandvig's injury was sustained on September 26, 1991. This action was brought against Dubreuil on September 24, 1993. It was served within two years of Judy Sandvig's injury plus the 14-day grace period of C.G.S. § 52-593a.[2] Nevertheless, Dubreuil does not rely on the first branch of C.G.S. § 52-584.
Dubreuil does rely on the second branch of C.G.S. § 52-584
which provides, "no such action may be brought more than three years from the date of the act or omission complained of. . . ." CT Page 3625 This is known "more precisely as `the repose section' of the statute of limitations. Sherwood v. Danbury Hospital,252 Conn. 193, 202-203, fn. 9 (February 29, 2000). See also, Witt v. St.Vincent' Medical Center, 252 Conn. 363, 369, fn. 5 (March 14, 2000).
 Section 52-584 Is The Proper Statute of Limitations
Plaintiffs claim "the defendant contractor in the instant action incorrectly uses C.G.S. § 52-584. This three year maximum time limitation is inapplicable to contractors." Preliminary Memorandum Of Law In Opposition To Motion For Summary Judgment By The Defendant A. Dubreuil Sons, Inc. Dated 1/6/97, April 11, 1997, p. 5. [183]
With its Motion For Summary Judgment, Dubreuil submitted an affidavit of Eugene Dubreuil, its Treasurer, which stated that "all of the work regarding the handicapped ramp in the basement hallway of the Jennings School was completed by the time school began in September 1989." Affidavit of Eugene Dubreuil, December 23, 1996, ¶ 5. [155]
The repose section of § 52-584 states that no action may be brought more than "three years from the act or omission complained of. . . ." Judy Sandvig's injury was sustained on September 26, 1991. The negligence allegations against Dubreuil are quoted above. See page 3. The verb in each negligence specification — "left," "failed" — is in the past tense. As alleged by plaintiffs, each act or omission complained of was completed — had occurred — before Judy Sandvig fell on September 26, 1991. September 26, 1991 is not "the date of the action or omission complained of."[3] Dubreuil claims that it had completed all its work in the areas where Mrs. Sandvig fell by the beginning of school, i.e., early September 1989. The service on Dubreuil in September 24, 1993 was four years later, i.e., four years after "the date Dubreuil claims is the date of the act or omission complained of." Thus, if Dubreuil had completed its work in the area where Judy Sandvig fell by the beginning of September 1989, this action would be barred by the repose section of C.G.S. § 52-584.
Plaintiffs maintain:
 "In Connecticut rule of law [Sic] states that a contractor is liable for all foreseeable harm which results from his CT Page 3626 negligence. "Coburn v. Lennox Homes, 173 Conn. 567, 378 A.2d 599 (1977). Further, the approach to contractor liability is analogous to that of product liability; and therefore extends beyond the two (2) year time limitation that the defendants attempt to make. Minton v. Krish, 34 Conn. App. 361, 367-8, 642 A.2d [Sic] 18, 21. (1994) [Sic]." Preliminary Memorandum Of Law In Opposition To Motion for Summary Judgment By The Defendant, A Dubreuil Sons, Inc. Dated 1/6/97, April 11, 1997, pp. 1-2. [183]
Plaintiffs waste nine pages of brief arguing that Coburn andMinton somehow render C.G.S. § 52-584 inapplicable to this case. Neither case has any such effect.
Plaintiffs argue: "I. IN CONNECTICUT, CONTRACTORS ARE LIABLE FOR ALL FORESEEABLE HARM "In Connecticut, a contractor is liable for all foreseeable harm which results from his negligence. Coburn v. Lenox Homes [Sic], Coburn v. Lenox Homes, 173 Conn. 567, 378 A.2d 599
(1977). In Coburn, the contractor was found liable in negligence, even though the plaintiffs had purchased the home from a party other than the defendant two (2) years after its completion, and five (5) years prior to the defendant being found negligent. Coburn v. Lenox Homes, 173 Conn. 567, 378 A.2d 599 (1977). The Connecticut Supreme Court applied a products liability' theory to the action, by using products liability cases from other jurisdictions. Coburn v. Lenox Homes, 173 Conn. 567; See also Carter v. Yardley Co., Ltd., 319 Mass. 92, 64 N.E.2d 693, MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916).
 "The Connecticut Court of Appeals has followed this test of feasibility [Sic]. In Minton v. Krish, Supra Court of Appeals clearly stated that the test for whether a contractor is liable is one of forseeability [Sic]. Minton v. Krish, 34 Conn. App. 361, 642 A.2d 18 (1994). In its holding, the Minton Court used cases founded on the theory of products liability, such as Coburn v. Lenox Homes, Supra and MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. (217 N.Y. 382, 111 N.E. 1050 (1916) to hold the defendant contractor liable based on a theory of forseeable [Sic] harm. Minton v. Krish, 34 Conn. App. 361, 367. Both the Connecticut Supreme Court and the Connecticut Court of CT Page 3627 Appeals used the forseeability [Sic] test from product liability cases, as set forth in MacPherson, to find that the construction of a building is analogous to the manufacture of a new product, and therefore, the contractor should be liable for all forseeable [Sic] harm. In Minton, the Court stated,`[t]he ordinary person buying such a house is in no better position to discover hidden dangers caused by the negligent construction that is the purchaser of a defective bottle of perfume . . ."' "Minton v. Krish, 34 Conn. App. 361, 366-267 [Sic], 642 A.2d 18, 21 (1994) quoting Coburn v. Lenox Homes, 173 Conn. at 574, 378 A.2d 599.
 "The Connecticut Court of Appeals outlined the effect of MacPherson on the liability of contractors in R.A. Civitello co [Sic]. v. City of New Haven, 6 Conn. App. 212 (1985), in which it stated:
 `"`The revolution in the law of negligence which began with [MacPherson] and which resulted in the recognition that privity was not a legitimate concern in negligence actions has finally producted [Sic] the general rule "that the seller is liable for negligence in the manufacture or sale of any product which any [Sic] reasonable [Sic] be expected to be capable of inflicting substantial harm if it is defective. . . .The effect of these legal developments on architects and engineers was to extend their liability beyond the date of completion of an improvement to all foreseeable users."'"'
 R.A. Civitello v. City of New Haven, 6 Conn. App. 212, 504 A.2d 542, 548 (1986). Since that time, architects and engineers have limited this time limitation to seven years by statute. See C.G.S. § 52-584a (limiting liability of architects and engineers to seven years).
 "Therefore, the defendant contractor in the instant action incorrectly uses C.G.S. § 52-584. This three year maximum time limitation is inapplicable to contractors. Instead, A. Dubriel Sons should be held liable under the same forseeability [Sic] test as the manufacturer of a defective product.
 "Under Coburn v. Lennox Homes and Minton v. Krish, the defendant A. Dubreuil Sons are liable for all forseeable [Sic] harms associated with the `product', [Sic] which is the building, as renovated by the defendant. CT Page 3628
 "The statute of limitations runs from the date of the injury under the authority of Coburn v. Lennox Homes, Minton v. Krish, R.A. Civitello. This plaintiff's claims was brought within two (2) years of her injury."
 Preliminary Memorandum Of Law In Opposition To Motion for Summary Judgment By The Defendant, A Dubreuil Sons, Inc. Dated 1/6/97, April 11, 1997, pp. 3-5. [183]
 Coburn v. Lennox Homes, Inc., 173 Conn. 567 (1977), is not germane to any issue in this case. In Coburn, plaintiffs bought a house from the original owners, who had contracted with the defendant builder for the construction of the new house. The septic system failed soon after the plaintiffs bought the house. Plaintiffs sued under C.G.S § 52-163a, claiming breach of contract, breach of implied warranties, and negligence. Section52-163a[4] (now C.G.S. § 47-121) provides a cause of action against a builder of a new house for some defects occurring within three years of the issuance of a certificate of occupancy. The trial court had sustained demurrers as to all counts. The Supreme Court upheld the demurrers to the § 52-163a, breach of contract, and breach of implied warranty counts; it held the court erred in sustaining the demurrer to the negligence count. The Court held C.G.S. § 52-163a afforded a cause of action only for the builder's immediate buyer. Plaintiffs had argued the three year period of limitation within § 52-163a meant that any purchaser buying within three years of the issuance of the certificate of occupancy had a cause of action under § 52-163a. The court rejected this argument; only the original buyer had an action under § 52-163a. This is the only reference to a statute of limitations in Coburn. After the Supreme Court held the demurrer to the negligence count was not valid, the case was tried. There was another appeal, but the second appeal did not involve any statute of limitations issue. Coburn v. Lennox Homes,Inc., 186 Conn. 370 (1982).
Coburn does not even touch upon any statute of limitations issue relevant to this case. Neither Coburn nor Minton v. Krish,34 Conn. App. 361 (1994), even discuss, much less hold, that Connecticut's courts have borrowed a product liability statute of limitations for negligence personal injury cases. These cases do hold that a contractor may be held liable to third parties after the owner has accepted the contractor's work; a change from prior law. See e.g., Bogoratt v. Pratt Whitney Aircraft Co.,
CT Page 3629114 Conn. 126 (1932). The court has no quarrel with the points decided in Coburn and Minton. Coburn and Minton define substantive rights, but they do not set time limitations within which those rights must be asserted. Neither case has anything to do with the issues in this case involving a statute of limitations, C.G.S. § 52-584. Neither Coburn or Minton are relevant to the issues before the Court. Neither case either hints at or alludes to what statute of limitations is applicable to an action of this type. Plaintiffs' assertions thatCoburn[5] and Minton[6] are authority on the statute of limitations issue in this case are unconvincing, unsupported, and just plain untrue.
Plaintiffs also cite R.A. Civitello Co. v. New Haven,6 Conn. App. 212 (1986), but to no avail. In that case, it was claimed C.G.S. § 52-584a, applicable to architects and engineers, "operates to extend to seven years the time during which an action may be brought to recover damages for delicta of an architect or professional engineer. Id., 222. That claim was expressly rejected because the statute itself stated that it did not "extend the period prescribed by the laws of this state for the bringing of any action." The court held:
 "The intent of the seven year statute, and its clear mandate, was to create a seven year absolute maximum on actions against architects and engineers, based upon the finite barrier of substantial completion, regardless of the nature of the claim, while leaving any other lesser limitations in effect.
 "The court was not in error in concluding that the third party plaintiff's . . . negligence claims against all three third party defendants was barred by General Statutes 52-584." R.A. Civitello Co. v. New Haven, 6 Conn. App. 212, 229 (1986).
Contrary to plaintiffs' assertions, R.A. Civitello Co. held that C.G.S. § 52-584a, as it was in effect at the time of the decision, did not create a seven year statute of limitations for architects and professional engineers abrogating C.G.S. § 52-584, the normal negligence statute of limitations. The court notes that shortly after R.A. Civitello Co. was decided, the General Assembly amended C.G.S. § 52-584a. As amended, C.G.S. § 52-584, the normal negligence statute of limitations, is no longer applicable to certain actions against architects and professional engineers, i.e., those actions where C.G.S. § 52-584a applies. See Grigerik v. Sharpe, 247 Conn. 293 (1998). CT Page 3630
The plaintiffs' too extended argument based on Coburn v. LennoxHomes, Minton v. Krish, R.A. Civitello Co. v. New Haven,MacPherson v. Buick Motor Co., Young v. Marx, etc., has no merit, has obfuscation its purpose, and is irresponsible.
 C.G.S. § 52-584a Is Not Applicable
Plaintiff claims that the seven year period of limitations of C.G.S. § 52-584a is applicable to this action against Dubreuil, a contractor. According to plaintiffs, "the Connecticut Court of Appeals has applied this seven (7) year time limitation of Section 52-584a to construction companies [Sic] in Young v. Marx,24 Conn. App. 81, 585 A.2d 1253 (1991)." Preliminary Memorandum Of Law In Opposition To Motion for Summary Judgment By The Defendant, A Dubreuil Sons, Inc. Dated 1/6/97, April 11, 1997, pp. 10-12. [183] As the plaintiffs point out, C.G.S. § 52-584a
was a statute of limitations in issue in that case with respect to the three defendants there, including Kapetan, Inc., the general contractor. Young did not involve any question as to whether § 52-584a was properly applied to Kapetan, Inc. "[T]he sole legal issue [was] whether the injury occurred more than seven years after substantial completion of the addition," the defining period of C.G.S. § 52-584a.
The opinion of the Appellate Court assumes the applicability of C.G.S. § 52-584a. It contains no discussion of why it was applied to the general contractor. There was no need to discuss this since the parties, particularly Kapetan, Inc., apparently did not contest its applicability in the Appellate Court.
The Appellate Court Records and Briefs make clear why there was no challenge by Kapetan, Inc. to the applicability of C.G.S. § 52-584a. The counts of the amended complaint against Kapetan, Inc., alleged:
 4. The Defendant, KAPETAN, INC. is engaged in the business of building construction.
 5. On or about July 22, 1977, Samuel Young hired the Defendant, KAPETAN, INC., general contractor to construct and design an addition to the aforementioned premises of the Plaintiff.
 6. On or about July 22, 1997, the Defendant, KAPETAN, INC., general contractor, through its agent, the Defendant, JOHN CT Page 3631 CRUET, JR., a licensed architect for the State of Connecticut, designed blueprints, drawings and specifications for the proposed addition.
 7. The Defendant, CHRISTOPHER MARX, is and at all times relevant hereto, was a licensed professional engineer under the laws of the State of Connecticut.
 8. The Defendant, CHRISTOPHER MARX, was at all times relevant hereto was an employee of the defendant CHRISTOPHER MARX ASSOCIATES, INC.
9. * * *
 10. On or about July, 1997, the Defendant, KAPETAN, INC., through its agent, Defendant JOHN CRUET, JR., engaged the CHRISTOPHER MARX ASSOCIATES, INC., and the Defendant CHRISTOPHER MARX to design, among other things, the floor and supporting structure for the second floor of said addition.
 11. On or after said date, the Defendant, CHRISTOPHER MARX designed said floor structure.
 12. Thereafter the Defendant, KAPETAN, INC., through its agent, the Defendant, JOHN CRUET, JR., incorporated the floor design created by the Defendant, CHRISTOPHER MARX into his overall plans for the building.
 13. Said floor was constructed by the Defendant, KAPETAN, INC., as part of said addition, and was substantially completed on July 31, 1979.
 14. Thereafter the Defendant, KAPETAN, INC., through its agent, the Defendant, JOHN CRUET, JR., incorporated the floor design created by the Defendant, CHRISTOPHER MARX into his overall plans for the building.
 15. Said floor was constructed by the Defendant, KAPETAN, INC., as part of said addition, and was substantially completed on July 31, 1979.
 16. On or about September, 1986, said floor experienced a total structural failure.
 17. The structural failure of the floor was caused by the CT Page 3632 negligence of the Defendant, KAPETAN, INC., in that it:
a. failed to adequately supervise its agent, JOHN CRUET, JR.;
 b. failed to ensure that the floor design met the specifications and requirements of the owner, Samuel Young;
 c. failure to exercise due care in preparing the design of the floor;
 d. failure to exercise due care in supervising the design of the floor.
 18. As a result of said property damage the Estate of Samuel Young will be required to expend substantial sums of money to repair the same.
 Amended Complaint, November 25, 1987, CV 87-0292738, Judicial District of Danbury; Appellate Court Records Briefs.
The trial courts's memorandum of decision shows conclusively that plaintiffs' invocation of Young was a strategic error.
 "Among the pleadings, the parties have set forth three different statutes of limitation and/or subsections thereof. The first is Sec. 52-584 with its two and three year provisions; the second is Sec. 52-584a prescribing a seven year period; and the third is 52-584a (b) permitting an additional one year if the wrong occurs within the seventh year. The court accepts without so holding the posture of the parties and their collective effort to frame this issue under Sec. 52-584 (a) and/or 52-584 (b). That posture seems to be generated by Young's allegation that Kapetan was hired to design and construct the addition to the premises, and therefore can fairly be characterized as both an architect and a professional engineer.
* * *
 "Despite their application of the seven year statute, the present action is untimely. The court reiterates that the undisputed dates of substantial completion of the improvement on July 31, 1979 and the commencement of the action on July 22 and July 23, 1987 does not permit the saving graces of the CT Page 3633 seven year statute. The agreed dates render Sec. 52-584 (b) inapposite. The limitation began to run on July 31, 1979 and the first of the seven years expired on July 30, 1980, and a simple diagram of the successive years utilizing those two July dates lead to the inescapable conclusion that year seven expired on July 30, 1986. The collapse occurred in September, 1986 at least thirty (30) days after the right to assert and prosecute the cause of action expired. Therefore, there can be no validity to the argument the injury occurred within the seventh year thereby permitting the triggering of the additional year within which the action might have been instituted. The court is constrained to grant the motion for summary judgment, and an order may enter accordingly."
Memorandum of Decision, January 30, 1990, CV 87-0292738, Judicial District of Danbury; Appellate Court Records Briefs.
Two sentences from the trial court's decision are noteworthy here:
 "The court accepts without so holding the posture of the parties and their collective effort to frame this issue under Sec. 52-584 (a) and/or 52-584 (b). That posture seems to be generated by Young's allegation that Kapetan was hired to design and construct the addition to the premises, and therefore can fairly be characterized as both an architect and a professional engineer."
This statement eviscerates plaintiffs' claims regarding the meaning of Young and the applicability of § 52-584a to contractors. The trial court recognized that § 52-584a did not apply to contractors. The trial court accepted (without agreeing) C.G.S. § 52-584a was applicable bowing to the way the parties had framed the issues. It supposedly was applicable to Kapetan because it also was alleged Kapetan acted in a design capacity "and therefore can fairly be characterized as both an architect and a professional engineer" as well as general contractor. Young is not authority that § 52-584a is the statute of limitations applicable to this case.
The court has previously ruled in this case that C.G.S. § 52-584a is not applicable in this case. When plaintiffs attempted to amend their complaint by adding contract counts, plaintiffs argued that § 52-584a was the statute of limitations applicable to these would be contract counts. The court, Handy, CT Page 3634 J., stated: "Since there is nothing before this court indicating that either defendant is anything but a contractor, the court rejects [plaintiffs'] argument [that 52-584a is applicable]". Memorandum of Decision, April 29, 1997, p. 3. [191]
In one of the several briefs plaintiffs have filed in opposition to Dubreuil's motion for summary judgment, plaintiffs state:
 "Additionally, during its construction, agents from A. Dubreuil Sons acted in an architectural and/or engineering capacity by making change orders, which included omitting changes to the floor area in which Mrs. Sandvig fell. Other `in the field' changes included changing the entire area of construction, and making changes which resulted in their leaving the floor area in a damaged condition In doing so, the agents and/or employees of A. Dubreuil Sons acted in a capacity beyond mere construction, and should therefore be held to the sames [Sic] statute of limitations as and architect and/or engineer as outlined in Section 52-584a." Preliminary Memorandum Of Law In Opposition To Motion for Summary Judgment By The Defendant, A Dubreuil Sons, Inc. Dated 1/6/97, April 11, 1997, pp. 12-13. [183]
Plaintiffs have inundated this file with various documents, transcripts, etc. But plaintiffs have not shown or pointed out in any of their several briefs where in the voluminous record there is a basis for these assertions. It is not the court's responsibility or function to hunt through the record to find same when plaintiffs, who make the claim, have not deemed it important enough to cite by chapter and verse the parts of the record which might support their assertions. Nor have plaintiffs cited any authority that the type of conduct just recited would bring a general contractor within the parameters of § 52-584a. "Making change orders" is not a term familiar to the court. However, the court knows that change orders are usually the product of an agreement between the owner and the contractor approved by the owner's design professional, i.e. architect or engineer. Such conduct does not make the contractor an architect or professional engineer.
Plaintiffs' Revised Amended Complaint does not contain any allegations which would make the conduct just described relevant to this case. It has been held, in the context of a summary judgment proceeding involving a statute of limitations, that CT Page 3635 material in an affidavit cannot enlarge a cause of action beyond what is in the complaint. In Collum v. Chapin, 40 Conn. 449
(1996), plaintiff opposed summary judgment by stating the defendants had engaged in a continuous course of conduct which tolled the statute of limitations. There were no allegations relevant to a continuing course of conduct in the complaint. The Appellate Court held:
 "`A summary judgment is proper where the affidavits do not set forth circumstances which would serve to avoid or impede the normal application of the particular limitations period . . . Affidavits are not pleadings, however, and a plaintiff cannot, under the guise of fortifying the complaint, present an entirely new cause of action or expand the scope of his cause of action by means of a counter-affidavit. . . . The issue must be one which the party opposing the motion is entitled to litigate under his pleadings and the mere existence of a factual dispute apart from the pleadings is not enough to preclude summary judgment.' (Citations omitted.) Shuster v. Buckley, supra, 5 Conn. App. 477. We conclude that the trial court properly declined to address the plaintiff's claim of a continuing course of conduct." Collum v. Chapin, 40 Conn. 449, 453 (1996).
Surely, bald statements such as plaintiffs have made in their brief do not have a greater stature than those in an affidavit. Those statements in the brief do nothing to aid plaintiffs.
The Revised Amended Complaint does not contain any allegations even suggesting Dubreuil acted in the capacity of an architect or professional engineer. In acting on a motion for summary judgment, the court is constrained by the pleadings. P.B. § 17-49, and the plaintiffs are bound by their complaint. However, even if plaintiffs had alleged Dubreuil acted in a design capacity, it would be for naught vis-a-vis § 52-584a. Section 52-584a would not be applicable against a doctor, lawyer, Indian chief, butcher, baker, candle stick maker, or contractor "for any deficiency in the design, planning contract administration, supervision, observation of construction or construction of, or land surveying in connection with an improvement to real property." Section 52-584a is specifically and only directed to an "architect, professional engineer, or land surveyor. surveyor." C.G.S. § 52-584a. Without an allegation in a pleading that Dubreuil was an "architect, professional engineer, or land surveyor," § 52-584a does not apply. There is CT Page 3636 no such allegation in a pleading in this case. Section 52-584a is not applicable.
 C.G.S. § 52-576 Is Not The Proper Statute Of Limitations
Plaintiffs also claim that C.G.S. § 52-576 is the statute of limitations applicable in this case[7] and also state that Judge Handy has so ruled. Plaintiffs' brief states:
 "On her April 29, 1997 decision regarding plaintiff's [Sic] amendments, Judge Handy applied a six year statute of limitations under C.G.S. § 52-576 to a contractor's liability in this case. This same time limitation should be applied in the instant Motion For Summary Judgment as well. (Memorandum of Decision, Handy, J. April 29, 1997 p. 5 . . .)." Preliminary Memorandum Of Law In Opposition To Motion For Summary Judgment By The Defendant A. Dubreuil Sons, Inc. Dated 1/6/97, April 11, 1997, p. 3. [183]
This statement is inaccurate and misleading, probably deliberately so. Plaintiffs moved in 1997 to amend the complaint in this negligence action by adding contract counts. Dubreuil contended that the proposed contract counts were barred by C.G.S. § 52-576. Plaintiffs had argued that C.G.S. § 52-584a should apply to the proposed contract counts. Judge Handy rejected plaintiffs' argument regarding § 52-584a: "Since there is nothing before this court indicating that either defendant is anything but a contractor, the court rejects [plaintiffs'] argument [that 52-584a is applicable]". Memorandum of Decision, April 29, 1997, p. 3. [191] Since more than six years had elapsed as of the time plaintiffs tried to add the contract counts, Judge Handy denied plaintiffs permission to add the contract counts because they were already time barred under § 52-576. Judge Handy never stated or even intimated that § 52-576 was applicable to this negligence action.
Apparently plaintiffs anticipated Judge Handy's April 29, 1997 denial of permission to add the contract counts. "By complaint dated April 15, 1997, the plaintiffs commenced a second cause of action alleging breach of contract." Sandvig v. A Dubreuil Sons, Inc., 53 Conn. App. 466, 468 (May 25, 1999). "On July 21, 1997, the trial court "dismiss[ed] the contract action on the basis of the prior pending action doctrine." Id. On appeal the dismissal was affirmed. Sandvig v. A Dubreuil Sons, Inc.,53 Conn. App. 466 (May 25, 1999); certification denied,250 Conn. 920 (September 9, 1999). Further, this court notes that the CT Page 3637 Appellate Court stated Judge Handy applied § 52-584 to this negligence cause of action. Id., 468, n. 4.
Judge Handy did not hold or even suggest the contract statute of limitations of C.G.S. § 52-576 had any application to this personal injury negligence action. In advocacy, zeal and inventiveness are often commendable; neither abrogates the obligation of candor with the court.
 Effect of Dubreuil Bankruptcy
Plaintiffs claim the statute of limitations was tolled by Dubreuil's bankruptcy. Preliminary Memorandum of Law In Opposition To Motion for Summary Judgment By The Defendant, A Dubreuil Sons, Inc. Dated 1/6/97, April 11, 1997, pp. 13-19. [183]
The following dates are pertinent to this claim:
 1. September 1989 — time Dubreuil claims it finished its work in area where fall occurred. 2. September 26, 1991 — date of Judy Sandvig's fall. 3. February 24, 1993 — Dubreuil files for bankruptcy. 4. September 24, 1993 — commencement of this lawsuit. 5. May-June 1994 — Bankruptcy Court lifts automatic stay retroactively.
Plaintiffs claim the statute of limitations was tolled for a period of one year, two months, and eight days. This is the length of time the automatic stay was in effect, i.e., February 24, 1993 to May 3, 1994. See 11 U.S.C. § 108 (c).
This action was brought in September 1993. This was during the automatic stay. Dubreuil has never asserted the violation of the stay as a defense. Plaintiffs have not served Dubreuil anew after the stay was lifted in May or June of 1994.
In May and June 1994, at plaintiffs' request, the Bankruptcy Court lifted the stay. Unequivocally, the plaintiffs have asserted that by virtue of the Bankruptcy Court's May and June 1994 orders, "[t]he stay was annulled or relieved retroactively." Preliminary Memorandum In Opposition To Dismiss, Sua Sponte, May 24, 1999. [299]
The several cases cited by plaintiffs do not remotely support CT Page 3638 the contention that a tolling occurred in this case.
The plaintiffs' claims that statutes of limitations[8] were tolled by the bankruptcy are nonsense.
 Irrelevant Contract Claim
In its brief in opposition to the motion for summary judgment based on the statute of limitations, C.G.S. § 52-584, plaintiffs state:
 IV. The Defendant, A. Dubreil Sons. had a continuing contractual duty to complete the construction and ensure the safety of the staff of the Jennings School.
Although the plaintiff need not be in privity of contract to record [Sic], she was under the specifications for Code Renovations to Charles B. Jennings School, 50 Mercer Street, New London, Connecticut. These specifications governed the construction project to which the Defendant, A. Dubreil Sons, was a party. In the document entitled, "Specifications for Code Renovations to Charles B. Jennings School . . . State Project #095-88-037CV, Part 3 Section 3.01 b (among other sections). The defendant, Dubreil, agreed to:
b. Protect all parts of structures that are to remain as well as equipment, furnishings, curbs, paving, and personnel, from damage by weather and by the Work. Assume full responsibility fordamage to structures and injury to personnel. Make repairs required to structures, without extra cost to Owner.
To date, the defendant A. Dubreil Sons has refused to assume responsibility for injuries to Mrs. Sandvig. By failing to provide for the medical costs and/or personal injury claim regarding the Plaintiff, Mrs. Sandvig, the Defendant, A Dubreil 
Sons, is in breach of its contract with the City of New London.
In Connecticut, a continuing duty exists where there is a:
 special relationship between the plaintiff and the defendant. The Supreme Court for the State of Connecticut has stated that, in order to establish a continuing course of conduct, there must be evidence of the breach of duty that remained in existence after commission of the original wrong related where to. That duty must not have terminated prior to commencement of CT Page 3639 the period allowed for bringing an action for such a wrong. . . . Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. [Internal quotation marks omitted.]
Blanchette v. Barrett, 229 Conn. 256, 276, 640 A.2d 74, 84
(1994).
 Here, under the specifications incorporated into the contract, A. Dubreil Sons had a continuing duty to repair and/or replace the damaged title, warn the plaintiff, Judy Sandvig of the defective condition and/or place warning signs in the area and/or assume full responsibility other injuries.
 The defendant, A Dubreil Sons, has in the past, and continues, to breach its agreement under the provisions listed above, by failing to take responsibility of Mrs. Sandvig's injuries, and the costs attributed thereto.
 Further, it had a continuing duty to repair the damage done to the title area and/or replace the title as outlined under the specifications.
 Preliminary Memorandum of Law In Opposition To Motion For Summary Judgment By The Defendant A. Dubreuil 
Sons, Inc. Dated 1/6/97, April 11, 1997, pp. 20-21. [183]
The significance of the quoted material resides in what plaintiffs do not say. This material was submitted to oppose Dubreuil's motion for summary judgment based on a statute of limitations. In this section of their brief, plaintiffs do not set forth a claim or argument that the contract extended the statute of limitations, a tolling, or that a contractual duty to warn continued to the time of Judy Sandvig's fall. In fact, this section of the brief presents nothing relevant to the instant motion for summary judgment.
The quoted section of plaintiffs' brief sets forth a contract claim, quoting a section of the contract between the City of New CT Page 3640 London and Dubreuil for the Jennings School renovations. This section and others sections of that contract were the gist of the contract counts plaintiffs attempt to amend contract counts into this action by their Request To Amend, March 7, 1997. [173] See Amended Complaint, March 7, 1997, ¶ 5, attached thereto. [173] The attempt to add the contract counts was specifically denied. See Memorandum of Decision, April 29, 1997. [191] The plaintiffs' argument based on the provisions of the contract are of no merit or effect here.[9]
In their Supplemental Objection To Motion For Summary Judgment By A. Dubreuil Sons, Inc., July 18, 1997, p. 2, [245] plaintiffs continue to claim that the contract between the City of New London and Dubreuil provided that Dubreuil "had a continuing duty to repair the floor at the base of the handicapped ramp and/or prevent the floor from being left in a defective condition in the Jennings School." Id., p. 2. In that later brief, plaintiffs say they "supplement its [Sic] `continuing duty' argument set forth in section 4 of its [Sic] April 11, 1997, Preliminary Memorandum of Law in Opposition to Motion for Summary Judgment by A Dubreuil Sons, Inc." Id., 1. Again, this brief argues a contract cause of action although contract causes of action, are not a part of this negligence case; plaintiffs attempts to add contract counts to this case were expressly rejected by this court. See Memorandum of Decision, April 29, 1997. [191] Again, plaintiffs' arguments based on the contract are of no avail.
 No Genuine Issue of Fact About When Dubreuil Last Worked In Basement Hallway Where Fall Occurred
Dubreuil contends this suit is barred by the repose section of C.G.S. § 53-584. The date of the original complaint is September 24, 1993. Dubreuil says its alleged "act or omission complained of" occurred more than three years before suit was brought in September 1993. To support this contention, Dubreuil filed the affidavit of its treasurer, Eugene Dubreuil. Pertinent here are the following from that affidavit:
 2. I was Treasurer of the defendant, A Dubreuil Sons, Inc., and supervisor for the work performed at the Jennings School. . . .
* * * CT Page 3641
4. I am familiar with the subject matter of this lawsuit.
 5. Pursuant to the aforementioned contract, A. Dubreuil 
Sons, Inc. began its work in July 1989 and all of the work regarding the handicapped ramp in the basement hallway of Jennings School was completed by the time school began in September 1989.
 6. A. Dubreuil Sons, Inc. did not perform any tile work in the basement hallway where the plaintiff alleges to have fallen.
Affidavit of Eugene Dubreuil, December 23 1996 [155]
Judith Sandvig also submitted an affidavit, which reads
 2) I was a Teacher's Aide (personnel) at the Charles B. Jennings School, 50 Mercer Street, New London, Connecticut, from January of 1984 to September of 1993.
 3) During that time I worked in an area that ultimately became the location for the handicapped ramp, located on the lower level of the Jennings School.
 I also observed the condition of the floor in the area where I fell on September 26, 1991.
 4) I observed the condition of the floor in the area where I fell prior to any construction in this area by A. Dubreuil Sons, sometime during 1989 and 1990.
 5) Prior to the construction performed by A. Dubreuil 
Sons, the floor area where I fell was not in a state of disrepair. After the construction by A. Dubreuil Sons, the floor was in a state of disrepair, described below.
 6) The school and the school personnel did not occupy the area and the area was in the exclusive control of the defendant, A. Dubreuil Sons, Inc., until they completed construction.
 7) When the Jennings School and school personnel returned to the classroom, the wall had been moved and the handicap ramp was installed. CT Page 3642
 8) The school year, and/or my teaching schedule, was delayed during the beginning of the 1989-1990 academic year, because A. Dubreuil Sons continued to maintain control over the lower level of the Jennings School. One of the classrooms located on this lower level was assigned to me.
 9) In October of 1989, I observed the condition of the floor area located at the end and/or bottom of the handicapped ramp on the lower level of the Jennings School, adjacent to my assigned classroom.
 10) On October of 1989, the condition of the floor area outlined in paragraph 8 was damaged and/or left in a poor condition. The tile was in pieces, some of which were jagged, and the surface was uneven. Parts of the tile were broken and chipped away.
 11) There were no barriers, barricades or warning signs and the area was not cordoned off.
 12) The condition of the floor on September 26, 1991 was primarily the same condition as I observed it in October of 1989.
* * *
 14) I dispute that the defendants completed work by September, 1989. The defendant's witnesses have testified as to several dates on which the defendant and/or co-defendants may have completed work in the Jennings School, which are later than September of 1989. The affidavit of Ronald Willert of Colonial Carpet 
Tile indicates they did not perform any work after April 2, 1990. Therefore, by their own admission, a time line may begin in April of 1990.
 15) I know they were working on the lower level of the school [Sic] was ongoing into October of 1989.
 Investigation has not discovered the exact date that A. Dubreuil Sons completed work.
 Affidavit of Judith Sandvig, April 11, 1997; CT Page 3643 Attached to and a part of Plaintiffs' Additional Documents In Opposition To Summary Judgment, April 11, 1997. [185]
Judith Sandvig's affidavit does not contradict but largely corroborates Dubreuil's statement that Dubreuil had finished its work where the fall occurred "by the time school began in September 1989." Dubreuil affidavit, ¶ 5. Analysis of the Sandvig affidavit shows it does not refute Dubreuil's statement that "all of the work regarding the handicapped ramp in the basement hallway of Jennings School was completed by the time school began in September 1989." Sandvig says "[t]he school year, and/or my teaching schedule, was delayed during the beginning of the 1989-1990 academic year, because A. Dubreuil Sons continued to maintain control over the lower level of the Jennings School." Sandvig affidavit, ¶ 8. "In October of 1989, I observed the condition of the floor area located at the end and/or bottom of the handicapped ramp on the lower level of the Jennings School, adjacent to my assigned classroom." Sandvig affidavit, ¶ 9. "In October of 1989, the condition of the floor area outlined in paragraph 8 was damaged and/or left in a poor condition. The tile was in pieces, some of which were jagged, and the surface was uneven. Parts of the tile were broken and chipped away." Sandvig affidavit, ¶ 10. These statements do not contradict Dubreuil's statement that it had completed its work in the specific area where Sandvig fell by early September 1989. At most, Sandvig says the lower level of the school was still under the control of Dubreuil until sometime in October 1989. She does not say she observed any work being done by Dubreuil in the specific area where she fell in September or October 1989. For that matter, she does not even say she saw any work being done in the lower level in September or October 1989. At most she says that Dubreuil "continued to maintain control over the [entire] lower level. She carefully refrains from saying she saw any work being done where she fell during September or October. Sandvig's affidavit does not refute or contradict Dubreuil' statement that Dubreuil's work in the locale where the fall occurred was done by early September 1989.
Even if Sandvig's affidavit is taken as showing that Dubreuil had worked where Sandvig fell as late as October, 1989, it is for naught. Even if Dubreuil had not completed its work in the location of the fall until sometime in October 1989, that was still well more than three years before the action was begun in September of 1993. Thus, even if Dubreuil last worked in the area CT Page 3644 in October 1989, the action is barred.
It is quite telling that plaintiffs' counsel for has given absolutely no attention to the carefully crafted Sandvig affidavit in the numerous briefs and other materials submitted in opposition to Dubreuil's motion for summary judgment. The initial brief submitted by plaintiffs opposing Dubreuil's motion for summary judgment is dated and was filed on April 11, 1997. Preliminary Memorandum of Law In Opposition To Motion For Summary Judgment By The Defendant A. Dubreuil Sons Dated 1/6/97, April 11, 1997. [183] On the same day plaintiff submitted Judith Sandvig's affidavit. Affidavit of Judith Sandvig, April 11, 1997; Attached to and a part of Plaintiffs' Additional Documents In Opposition To Summary Judgment, April 11, 1997. [185] The plaintiffs' April 11, 1997 brief does not mention the Sandvig Affidavit. And this in light of the statement in the brief that "there remains a question of fact as to when the statute begins to run. Defendant, Eugene Dubreuil has given several possible dates of completion. . . ." Id., p. 13, n. 1.
The Sandvig affidavit is not mentioned in the next brief filed by plaintiffs opposing summary judgment. Supplemental Objection To Motion For Summary Judgment By A. Dubreuil Sons, Inc., July 18, 1997 [245] Nor is the affidavit mentioned in the third and apparently final brief in opposition to summary judgment. Supplemental Memorandum of Law In Support of Plaintiffs' Objection To Defendant A. Dubreuil Sons' Motion For Summary Judgment, November 19, 1998. [282] The omission of any reference or reliance on the Sandvig affidavit is not an oversight.
The message is clear; counsel knows the statements in the Sandvig affidavit do not create a genuine issue of fact regarding the time when Dubreuil completed its work in the area where the fall occurred.
By a bevy of other materials, plaintiffs try to fabricate grounds for the court to find there is a genuine issue of material fact on when Dubreuil last worked in the location where Sandvig fell. Despite plaintiffs' attempts to obscure, the critical issue here is when Dubreuil last worked in the very place where the fall occurred; whether Dubreuil continued to work at other places within the Jennings School is not relevant.
Plaintiffs also look to the affidavit of Ronald Willert, an officer of the subcontractor, Colonial Carpet Tile, Inc. CT Page 3645 Affidavit of Ronald Willert, July 14, 1998, attached to Colonial Carpet's Memorandum In Support of Motion For Summary Judgment, November 12, 1998. [280] This affidavit states Colonial Carpet had completed all work at the Jennings School in the area where Sandvig is alleged to have fallen by April 12, 1990. The court doubts Colonial Carpet's action are attributable to Dubreuil. But this uncertainty need not be resolved. Even if April 12, 1990 is the operative date, the action is barred since April 12, 1990 is more than three years before September 24, 1993, the dare of plaintiffs' complaint.
The thrust of plaintiffs' Supplemental Memorandum of Law In Support of Plaintiffs' Objection To Defendant A. Dubreuil Sons' Motion For Summary Judgment, November 19, 1998 [282] is that the statute of limitations should not begin to run until the time when Dubreuil finished all its work under the contract. According to plaintiffs, this was in August 1992.
 "[P]laintiffs claim, and continue to claim, that the defendant, A. Dubreuil Sons has a continuing duty to complete the project, namely to repair and/or replace broken tile, up until the last date on which work was performed in any part of the Jennings School. Therefore claim [Sic] the proper date on which any statute of limitations in the instant action should begin to run, if not the date of Mrs. Sandvig's fall, is the last date on which the Defendant performed any work under the Contract for `Code Renovation' to the Jennings School. That date is August, 1992." Supplemental Memorandum of Law In Support of Plaintiffs' Objection To Defendant A. Dubreuil Sons' Motion For Summary Judgment, November 19, 1998, p. 3, fn. 1. [282]
The court rejects plaintiffs' contention. The focus of C.G.S. § 52-584 is "the date of the act or omission complained of." This is the date Dubreuil did some act or failed to perform some act at the situs of Sandvig's fall that caused the condition which precipitated the fall. It is not the date when Dubreuil performed the last of its obligations under the contract anywhere in the Jennings School.
Plaintiffs have not produced anything which refutes or contradicts Dubreuil's sworn statement that "all of [Dubreuil's] work regarding the handicapped ramp in the basement hallway of Jennings School was completed by the time school began in September 1989." Affidavit of Eugene Dubreuil, December 23, 1996. CT Page 3646 [155] The court holds that no genuine issue of fact exists as to the time when Dubreuil completed its work at the place where Judith Sandvig fell. That was September 1989.
 Alleged Failure to Warn Does Not Delay or Extend Period of Limitation
Plaintiffs allege Dubreuil "[f]ailed to warn of the defective condition" which plaintiffs claim caused Judith Sandvig's fall. Revised Amended Complaint, July 12, 1996, pp. 1-2. [134] Implicitly at least, plaintiffs contend the statute of limitations as to the failure to warn did not begin to run until Judith Sandvig fell on September 26, 1991.
The law is otherwise. In Bartha v. Waterbury House Wrecking Co., 190 Conn. 8 (1983), plaintiff fell at a construction site in 1977. He brought suit against the defendant in 1979 alleging the defendant had "[created] a hazardous condition having a tendency to cause injury by failing properly to safeguard in some manner the hole into which plaintiff fell." Id., 9. The defendant moved for summary judgment based on the statutes of limitations, C.G.S. §§ 52-577 and 52-584. It submitted an affidavit that it left the site in 1972. "The trial court granted summary judgment, ruling that the statutes of limitations barred the action because the affidavit supporting the motion indicated that the defendants had ceased work on the site and that the contract had been completed more than three years before `the date of the act or omission complained of.' General Statutes 52-577, 52-584." Id., 10. The Supreme Court stated:
 "The fact that the defendant may have been aware of this hole at the time the contract was completed, however, would not in itself establish that it had a continuing duty to warn of the danger or to safeguard the hole. See Handler v. Remington Arms Co., 144 Conn. 316, 321, 130 A.2d 793 (1957); Vilcinskas v. Sears, Roebuck Co., 144 Conn. 170, 174, 127 A.2d 814 (1956). The plaintiff presented no facts, by affidavit or in some other form required by Practice Book 380, 381, which would reasonably support an inference of a continuing breach of duty by the defendant. The complaint itself contains no allegation of facts giving rise to a continuing duty on the part of the defendant. Without any indication of a continuing breach of duty properly presented, the trial court was entitled to rely on the statement in the affidavit that the contract work was completed and that the company's contact with the site ceased more than CT Page 3647 three years before the commencement of the action. Since the facts were not disputed and there appeared no countervailing circumstances impeding the normal application of the statute of limitations, the summary judgment was properly rendered." [Footnote omitted.] Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 13-14 (1983).
The Appellate Court has described the significance of
Bartha:
 "In Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 13, 459 A.2d 115 (1983), [our Supreme Court] held that the alleged negligence of a contractor in failing to safeguard a dangerous hole left on the job site after it had completed its work would not in itself establish that it had a continuing duty to warn of the danger or to safeguard the hole. [The Bartha court] affirmed the summary judgment granted by the trial court in that case because the plaintiff had presented no facts, by affidavit or otherwise, that would reasonably have supported an inference that the duty to protect against the hazard left upon the premises extended for any substantial period beyond the time of the contractor's departure from the site. Fichera v. Mine Hill Corporation, 207 Conn. 204, 209, 541 A.2d 472
(1988)." [Internal quotation marks omitted.] Nardi v. AA Electronic Security Engineering, Inc., 32 Conn. App. 205, 212
(1993). See also, Fichera v. Mine Hill Corporation, 207 Conn. 204 (1988).
Nothing in the Revised Amended Complaint supports a claim that Dubreuil "had a continuing duty to warn of the danger" caused by the allegedly defective floor. Nor have plaintiffs submitted anything else cognizable in this summary judgment proceeding which establishing that Dubreuil had a duty to warn that continued well over three years after Dubreuil completed its work where the fall occurred to the time Judith Sandvig fell.
Plaintiffs have not claimed the statute of limitations was tolled under the continuing course of conduct doctrine. Certainly plaintiffs have not presented any discussion or analysis thereon. It is not a part of this case.[10]
Plaintiffs' claim regarding Dubreuil's alleged failure to warn has no merit for another reason. According to the complaint, Dubreuil [f]ailed to warn of the defective condition." Revised CT Page 3648 Amended Complaint, July 12, 1996, p. 2, ¶ 4(e). [134]
Judith Sandvig's affidavit states in part:
 4) I observed the condition of the floor in the area where I fell prior to any construction in this area by A. Dubreuil Sons, sometime during 1989 and 1990.
 5) Prior to the construction performed by A. Dubreuil 
Sons, the floor area where I fell was not in a state of disrepair. After the construction by A. Dubreuil Sons, the floor was in a state of disrepair, described below.
* * *
 9) In October of 1989, I observed the condition of the floor area located at the end and/or bottom of the handicapped ramp on the lower level of the Jennings School, adjacent to my assigned classroom.
 10) On October of 1989, the condition of the floor area outlined in paragraph 8 was damaged and/or left in a poor condition. The tile was in pieces, some of which were jagged, and the surface was uneven. Parts of the tile were broken and chipped away.
 11) There were no barriers, barricades or warning signs and the area was not cordoned off.
 12) The condition of the floor on September 26, 1991 was primarily the same condition as I observed it in October
of 1989.
* * *
 Affidavit of Judith Sandvig, April 11, 1997, Attached to and a part of Plaintiffs' Additional Documents In Opposition To Summary Judgment, April 11, 1997. [185]
A person who knows of a defective condition is not owed a duty to warn. In cases involving possessors of land and invitees, the Supreme Court stated:
 "The duty to warn, however, does not arise if an invitee CT Page 3649 already has actual knowledge of the dangerous condition." Fleming v. Garnett, 231 Conn. 77, 84 (1994)
Additionally,
 "The possessor of land has no duty to warn an invitee of a dangerous condition when the invitee has actual knowledge of the condition. . . . the failure to warn an invitee of something he already knows is without legal significance." Warren v. Stancliff, 157 Conn. 216, 220 (1968)
The Appellate Court has said:
 "Warning an invitee against dangers which are either known to him or are so obvious to him that he may be expected to discover them is unnecessary. [Citations omitted.]" Kurti v. Becker, 54 Conn. App. 335, 344 (1999).
The court knows that Judy Sandvig and Dubreuil are not in the relationship of invitee/possessor of land. However, their relationship is sufficiently analogous.
Judith Sandvig knew of the floor's defective condition years before she fell on September 26, 1991. "The condition of the floor on September 26, 1991 was primarily the same condition as I observed it in October of 1989." Affidavit of Judith Sandvig, April 11, 1997, ¶ 12. As of September 26, 1991, the day of her fall, no duty to warn Judith Sandvig of the defective floor condition existed as she had been aware of it since October 1989. Any duty to warn Judith Sandvig ended in October 1989 when she observed the defective condition. Dubreuil owed no duty to warn Judy Sandvig in September 1991 of the defective condition of the floor because she had been aware of it for some two years.
 Conclusion
The court has addressed "each claim of law raised by the parties and the factual basis therefor." P.B. § 6-1(a).
For the reasons detailed above, the defendant Dubreuil is entitled to summary judgment.
Judgment shall enter for the defendant, A. Dubreuil Sons, Inc., and against the plaintiffs, Judy Sandvig and Karl Sandvig. CT Page 3650
Parker, J.